## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ST. CHARLES SURGICAL HOSPITAL, L.L.C. and CENTER FOR RESTORATIVE BREAST SURGERY, L.L.C.,** | **CIVIL ACTION NO. 2:19-cv-13497** |
| *Plaintiffs,* | |
| **v.** | **JUDGE** |
| **LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY D/B/A BLUE CROSS/BLUE SHIELD OF LOUISIANA, BLUE CROSS & BLUE SHIELD OF LOUISIANA, INC., and HMO LOUISIANA, INC.,** | **MAGISTRATE JUDGE** |
| *Defendants.* | |

### NOTICE OF REMOVAL

TO THE HONORABLE JUDGES OF THE EASTERN DISTRICT OF LOUISIANA:

Defendants Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana and HMO Louisiana, Inc. (collectively, "BCBSLA" or "Defendants") file this Notice of Removal, and to the extent required, reserve any and all rights, objections, defenses, and exceptions.

Title 28 U.S.C. § 1446 requires that a short and plain statement of the grounds for removal accompany any notice of removal. This case is removable because the controversy arises under the laws of the United States, specifically the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. § 8901 *et seq.*, and therefore, this Court has federal-question subject-matter jurisdiction pursuant to 28 U.S.C. § 1331. As will be discussed below, Plaintiffs St.

1

Charles Surgical Hospital, L.L.C. ("SCSH") and Center for Restorative Breast Surgery, L.L.C. ("CRBS") assert claims to benefits due to their patients by virtue of assignments of benefits given to them by those patients. In many cases, the benefits assigned to them are benefits due under health benefit plans subject to ERISA or FEHBA. Accordingly, such claims provide a basis for removal of the entire action. *See, e.g.*, *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337–338 & n.11 (5th Cir. 1999).

This removal is timely because it is filed within 30 days of the state court granting leave for Plaintiffs to file their Third Amended Petition for Damages, from which it could first be ascertained that this case is removable. *See* 28 U.S.C. § 1446(b)(3).

In support of this removal, BCBSLA avers as follows:

## I.     Parties

1.     Plaintiff SCSH is a specialty hospital located in New Orleans, Louisiana. It is organized as a Louisiana limited-liability company. On information and belief, its members are individuals domiciled in the state of Louisiana.

2.     Plaintiff CRBS is a physician's clinic located in New Orleans, Louisiana and affiliated with SCSH. It is organized as a Louisiana limited liability company. On information and belief, its members are individuals domiciled in the state of Louisiana.

3.     Defendant Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana is a not-for-profit mutual insurance company organized under the laws of the state of Louisiana with its principal place of business in Baton Rouge, Louisiana.

4.     Defendant HMO Louisiana, Inc. ("HMOLA") is a corporation organized under the laws of the state of Louisiana with its principal place of business in Baton Rouge, Louisiana. HMOLA is a wholly owned subsidiary of Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana.

5.     Also named as a Defendant in state court is "Blue Cross and Blue Shield of Louisiana, Inc." Yet, there is no such company as "Blue Cross and Blue Shield of Louisiana, Inc." according to the Louisiana Secretary of State. Notwithstanding, because this fictitious entity is named by Plaintiffs in the lawsuit being removed, BCBSLA has identified it here.

## II.    Procedural Background

6.     Plaintiffs filed their original petition against BCBSLA on February 3, 2017 in the Civil District Court for Orleans Parish, Louisiana in an action styled *St. Charles Surgical Hospital, L.L.C. and Center for Restorative Breast Surgery, L.L.C. versus Louisiana Health Service and Indemnity Company d/b/a Blue Cross/Blue Shield of Louisiana, Blue Cross & Blue Shield of Louisiana, Inc, and HMO Louisiana Inc.* and bearing civil action number 2017-1095.

7.     Plaintiffs filed their first amended petition against Defendants on April 12, 2017.

8.     This Court then permanently enjoined all but one of Plaintiffs' claims under the All Writs Act and the Anti-Injunction Act. *See La. Health Serv. & Indemn. Co. v. Ctr. for Restorative Breast Surgery, LLC*, No. 2:17-cv-04171, 2017 U.S. Dist. LEXIS 78020, at *3, *18–*23 (E.D. La. May 23, 2017) (Morgan, J.).

9.     Plaintiffs filed their second amended petition in state court on June 19, 2017. This second amended petition asserted fraud and abuse-of-rights claims under Louisiana law that carefully based these claims on allegations that BCBSLA promised to pay Plaintiffs a specified amount for treatment of patients, and then failed to pay the promised amount.

10.     On October 10, 2019, Plaintiffs filed and served on BCBSLA a motion for leave to file a third amended petition, attaching their proposed third amended petition.

11.     On October 31, 2019, Plaintiffs, for the first time, produced to BCBSLA spreadsheets detailing the individual patient transactions Plaintiffs contend are at issue in the litigation. These lists assert claims with respect to patients who are enrolled in the "BC/BS

3

FEDERAL" plan, as well as Blue Plans from states outside Louisiana, including, but not limited to, Alabama, Arizona, California, Florida, Georgia, Hawaii, Idaho, Illinois, Iowa, Kentucky, Maryland, Massachusetts, Michigan, Mississippi, Montana, Nebraska, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, and Washington.

12.     On November 7, 2019, the state court issued an order granting the motion for leave and entering Plaintiffs' Third Amended Petition for Damages (the "Third Amended Petition") into the record. A copy of this order and the as-filed Third Amended Petition are attached hereto as part of Exhibit 1. *See infra*, ¶ 14.

13.     The Third Amended Petition differs markedly from Plaintiffs' second amended petition by stating for the first time allegations that Plaintiffs are the assignees of patient claims and that BCBSLA has failed to honor those assignments (¶ 49), by alleging that BCBSLA has denied, delayed, and reduced payments of claims for "covered services" and "covered procedures" through misapplication of plan provisions concerning, among other things, authorizations and medical necessity (¶¶ 51–52), by alleging that BCBSLA has failed to properly administer claims for out-of-state insureds (¶¶ 44, 65, 74), and by alleging that BCBSLA has interfered with Plaintiffs' ability to file appeals under the plans of its assignor patients (¶¶ 47–48).

14.     Pursuant 28 U.S.C. § 1446(a), a copy of all pleadings served on BCBSLA are attached hereto as Exhibit 1.

15.     Time delays for removal commence upon service. 28 U.S.C. § 1446(b); *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354–55 (1999) (time delay for removal commences upon formal service of pleading giving rise to right to remove). Since

BCBSLA waived service, BCBSLA is removing this matter within thirty days of the order granting leave to file the Third Amended Petition and the filing of the Third Amended Petition in state court.

## III. Factual Background

16.    The Third Amended Petition alleges state law claims for fraud and abuse of rights, asserting that "Plaintiffs, relying on Defendants' authorizations, statements, confirmation of medical necessity, and representations, provided quality services to Defendants' customers, only to receive grossly insufficient payments" or have payments denied. Third Amended Petition for Damages ("Pet.") ¶¶ 6, 26. Plaintiffs' allegations concerning "authorizations," "medical necessity," assignments, and denial of health benefit claims are raised for the first time in the Third Amended Petition.

17.    Plaintiffs assert that they "are considered 'Non-participating provider(s)' by Defendants because they do not have a contract with Defendants," meaning that "Plaintiffs are out-of-network providers." *Id.* ¶ 17.

18.    Plaintiffs assert that their patients are "insureds" of BCBSLA.  *Id.* ¶¶ 44–45, 65, 74.

19.    Plaintiffs assert that they received "valid and enforceable assignments of claims" from their patients and that "Defendants were advised to communicate with Plaintiffs" before making payment pursuant to the patients' health benefits plans. *Id.* ¶ 49. Plaintiffs assert that BCBSLA "refused and failed to recognize" the assignments Patients received from their Patients. *Id.* BCBSLA's health benefit plans contain specific provisions concerning assignments.

20.    Plaintiffs assert that BCBSLA "knew or should have known that Plaintiffs were providing medical care and treatment," but "would direct time-sensitive payment related documents with appeal deadlines" to BCBSLA's insureds "instead of mailing the documents to

Plaintiffs." *Id.* ¶ 48. BCBSLA's health benefit plans contain specific provisions concerning appeals, which are defined as requests to change a previous decision regarding plan benefits. Plan examples of issues that qualify as appeals include denied authorizations, adverse determinations of medical necessity, and benefit determinations.

21.    Plaintiffs assert that "Defendants' manual provides that the 'authorization department' **will first determine if services are medically necessary**, and then approve a member to receive the necessary services at the highest possible level." *Id.* ¶ 24 (emphasis added).

22.    Plaintiffs assert that they "followed Defendants' procedures and obtained authorizations prior to performing any services for Defendants' customers." *Id.* ¶ 25. BCBSLA's health benefit plans contain specific provisions concerning "authorizations" on the basis of medical necessity.  These provisions require, among other things, that certain medical procedures and hospital stays be approved by the plan in advance.

23.    Plaintiffs assert that after Plaintiffs "provided authorized medical services to customers of Defendants, Defendants would, among other things, deny payment and claim that its issuance of an authorization to render medical care and/or perform procedures did not mean Plaintiffs were authorized to receive payment and/or reasonable payment for those services rendered." *Id.* ¶ 26.

24.    Plaintiffs assert that "Defendants systematically and intentionally failed to notify Plaintiffs that **Defendants no longer believed the procedures were medically necessary**, and then denied payment to Plaintiffs based on Defendants' internal change of position regarding the authorizations." *Id.* ¶ 64 (emphasis added). BCBSLA's health benefit plans contain specific provisions concerning "authorizations" of hospital admissions or other health care service or supply that satisfy clinical review criteria for medical necessity.

25.    Plaintiffs assert that BCBSLA "***concealed and misrepresented guidelines and criteria to deny, delay, and/or reduce payment for medically necessary covered services*** and refuse to disclose applicable fee schedules." *Id.* ¶ 51 (emphasis added).

26.    Plaintiffs assert that BCBSLA "misrepresented and failed to disclose its internal policies and procedures designed to reduce payment through the use of edits that would downcode, reduce, or reject previously authorized payments for medically necessary and covered procedures performed by Plaintiffs." *Id.* ¶ 52.

27.    In sum, the Third Amended Petition, unlike its predecessors, goes beyond mere allegations about payment for services and instead alleges that BCBSLA breached duties and standards of conduct in the administration of its own plans, as well as plans issued by other Blue Plans, with respect to benefit determinations, such as the medical necessity of Plaintiffs' services.

## IV.    Removal Based on Complete Preemption under ERISA

28.    The federal removal statute provides that "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). Plaintiffs' Third Amended Petition is an "amended pleading" from which BCBSLA first ascertained that the case has become removable.

29.    This case is removable pursuant to 28 U.S.C. § 1441 based on federal question jurisdiction existing under 28 U.S.C. § 1331, because some of Plaintiffs' claims for payment are completely preempted by ERISA.

30.    Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the

defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

31.    Original jurisdiction, in turn, exists on the basis of a federal question whenever the action asserts a claim "arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331.

32.    Generally, a case "arises under" federal law only where a federal question appears on the face of the plaintiffs' well-pleaded complaint. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 391–92 (1987).

### A.    Complete Preemption under ERISA

33.    ERISA's "civil enforcement mechanism is one of those provisions with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65–66 (1987)). Specifically, section 502(a) of ERISA "set[s] forth a comprehensive civil enforcement scheme" reflecting Congress's choice to authorize certain remedies and eschew others, such that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id.* at 208–09. Hence, any state-law claim that falls "within the scope of the civil enforcement provisions of § 502(a) [is] removable to federal court." *Id.* at 209 (quoting *Taylor*, 481 U.S. at 66).

34.    Here, as explained below, Plaintiffs' claims are completely preempted by section 502(a)(1)(B) of ERISA, which provides that a civil action under ERISA may be brought "by a participant or beneficiary . . . to ***recover benefits*** due to him under the terms of his plan, to

*enforce his rights* under the **terms of the plan**, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) (emphases added).

35.      To determine whether a state-law claim is completely preempted by ERISA, the Fifth Circuit applies a two-part test set forth in *Davila*: "a claim is completely preempted if (1) the claimant 'could have brought his claim under ERISA § 502(a)(1)(B),' and (2) 'there is no other independent legal duty that is implicated by a defendant's actions.'" *Kelsey-Seybold Med. Grp. PA v. Great-West Healthcare of Tex., Inc.*, 611 F. App'x 841, 841 (5th Cir. 2015) (quoting 542 U.S. at 210). The first prong breaks down into two inquiries: (1) whether the plaintiff has standing to sue under ERISA and (2) whether the plaintiff's claim falls within the scope of ERISA. *See Lone Star OB/GYN Assocs. v. Aetna Health, Inc.*, 579 F.3d 525, 529 n.3 (5th Cir. 2009). Each element of the *Davila* test is met here.

36.      First, Plaintiffs plainly assert standing as assignees of the rights of their patients—BCBSLA's insureds—under their health benefit plans. "Third party medical providers may bring a claim under § 1132(a), if the provider is suing as an *assignee* of a beneficiary's rights to *benefits* under an ERISA plan." *Mem'l Hermann Hosp. Sys. v. Aetna Health Inc.*, No. H-11-267, 2011 U.S. Dist. LEXIS 94158, at *6 (S.D. Tex. Aug. 23, 2011) (alteration in original) (internal quotations marks omitted). The Third Amended Petition shows that Plaintiffs have been relying upon such assignments in bringing their putatively state-law claims. *See* Pet. ¶ 49 ("Through their continuous, systematic, sophisticated, and intentional scheme to defraud, harm, harass, and intimidate Plaintiffs, Defendants refused and failed to recognize **valid and enforceable assignments of claims** where Defendants were advised to communicate with Plaintiffs." (emphasis added)). And, as explained below, ERISA plans are implicated by

Plaintiffs' claims.[1] Thus, the Third Amended Petition clarifies that Plaintiffs have ERISA standing to bring derivative assigned claims for benefits pursuant to assignments of rights from their patients. *See Ctr. for Restorative Breast Surgery, L.L.C. v. Humana Health Ben. Plan of La., Inc.*, No. 10-4346, 2011 U.S. Dist. LEXIS 36709, at *11 (E.D. La. Mar. 21, 2011) (Fallon, J.) (same Plaintiffs as here) ("Although Plaintiffs tack on the explanation that the claim is 'based on the pre-procedure verifications of the Defendants,' there is simply no reason for Plaintiffs to have even mentioned the existence of the assignments . . . if Plaintiffs were not asserting the derivative assigned claims.").

37.    Second, Plaintiffs' claims are within the scope of section 502(a)(1)(B) of ERISA. In determining whether a state-law claim pertains to the recovery of ERISA plan benefits or the enforcement of plan rights under section 502(a)(1)(B), the Fifth Circuit distinguishes between claims based on "rate of payment" and "right of payment." Where, for instance, a claim is based on a determination of the rate of payment that an insurer owes a provider (*e.g.*, under a provider agreement), ERISA is not implicated presuming that the determination "does not require any kind of benefit determination under the ERISA plan." *Lone Star*, 579 F.3d at 530. But where the question is "the *right* to payment under the terms of the benefit plan," the claim falls within the scope of ERISA." *Id.*; *see also Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 325 (2d Cir. 2011) ("[W]here a provider's claim involves the *right to payment* and not simply the *amount or execution of payment*—that is, where the claim implicates coverage and benefit determinations as set forth by the terms of the ERISA benefit plan, and not simply the

---

[1] It is enough that one claim at issue is completely preempted even if others may not be. *See, e.g., Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337–38 (5th Cir. 1999) ("When a complaint raises both completely-preempted claims and arguably conflict-preempted claims, the court may exercise removal jurisdiction over the completely-preempted claims and supplemental jurisdiction . . . over the remaining claims.").

contractually correct payment amount or the proper execution of the money transfer—that claim constitutes a colorable claim for benefits pursuant to ERISA § 502(a)(1)(B).").

38.     Plaintiffs have no contract with BCBSLA. Pet. ¶ 17. And their state-law fraud and abuse-of-rights claims are based, in substantial part, on allegedly improper denials of payment for medically necessary procedures. *See, e.g.*, Pet. ¶ 24 ("Defendants' manual provides that the 'authorization department will first determine if services are ***medically necessary***, and then approve a member to receive the necessary services at the highest possible level." (emphasis added)); *id.* ¶ 64 ("After authorizing medical procedures, Defendants systematically and intentionally failed to notify Plaintiffs that ***Defendants no longer believed the procedures were medically necessary***, and then ***denied payment to Plaintiffs based on Defendants' internal change of position regarding the authorizations***." (emphases added)).

39.     Derivative claims that challenge medical necessity determinations and denial of assigned benefits are quintessentially ERISA claims under section 502(a)(1)(B). Indeed, courts have consistently held that state-law claims that require determinations of benefits under the terms of an ERISA plan—***including determinations of medical necessity***—are "right of payment" claims falling within the scope of ERISA. *See, e.g.*, *Lone Star*, 579 F.3d at 531 ("[A]ny determination of benefits under the terms of a plan—i.e., what is 'medically necessary' or a 'Covered Service'—does fall within ERISA."); *Christie v. Aetna Health, Inc.*, No. 4:10-cv-1766, 2011 U.S. Dist. LEXIS 134428, at *9 (S.D. Tex. Nov. 21, 2011) ("[C]laims stray . . . into ERISA territory if they assert[] improper denials of medically necessary claims and violations of ERISA procedural requirements.").

40.     Other allegations in the Third Amended Petition further demonstrate that Plaintiffs' claims fall within the scope of ERISA as they implicate ERISA-related procedural

requirements. Specifically, Plaintiffs assert that BCBSLA (i) "attempted to deprive Plaintiffs of documents and materials needed to appeal payments on authorized cases," Pet. ¶ 47; (ii) "would direct time-sensitive payment related documents with appeal deadlines to [BCBSLA's insureds] instead of mailing the documents to Plaintiffs," *id.* ¶ 48; and (iii) "concealed and misrepresented guidelines and criteria to deny, delay, and/or reduce payment for medically necessary covered services," *id.* ¶ 51. These claims implicating ERISA-related procedural requirements also bring the lawsuit within the scope of ERISA. *See Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1351 (11th Cir. 2009) (concluding that plaintiffs' allegations faulting defendant for "failing to provide an adequate explanation for the denial of claims for reimbursement" and "failing to ensure that procedures exist to properly consider plaintiffs' . . . claims for reimbursement, both initially and in the appeals process," fell within ERISA because the parties' provider agreements did not address defendant's obligations to provide explanations of denials or procedures for reviewing claims for reimbursement—rather, those requirements come from ERISA). In sum, because Plaintiffs' claims are predicated on (A) determinations of medical necessity and denial of payment under the terms of their patients' ERISA plans, and (B) ERISA-related procedural requirements, they fall within the scope of ERISA.

41.    Third, although Plaintiffs attempt to frame their theories of relief as arising under state law, their claims are not based on any independent, non-ERISA legal duty. "[S]tate law legal duties are not independent of ERISA where 'interpretation of the terms of [the] benefit plan forms an essential part' of the claim, and legal liability can exist 'only because of [the defendant's] administration of ERISA-regulated benefit plans.'" *Ford v. Freemen*, No. 3:18-CV-3095, 2019 U.S. Dist. LEXIS 85178, at *12 (N.D. Tex. May 21, 2019) (quoting *Davila*, 542 U.S. at 213). That is the case here. The Third Amended Petition reveals that Plaintiffs' claims are

predicated on (A) assignments of benefits and (B) BCBSLA's medical necessity and payment determinations. These concepts necessarily implicate BCBSLA's duties under the terms and conditions of its health-benefit plans. *See Cardiovascular Specialty Care Ctr. of Baton Rouge, LLC v. United Healthcare of La., Inc.*, No. 14-235, 2015 U.S. Dist. LEXIS 26217, at *2–5 (M.D. La. Mar. 4, 2015) (recognizing, where plaintiff "allege[d] that [defendant] owed a duty independent of any ERISA-regulated plan because [defendant] made representations via telephone, prior to [plaintiff] rendering services, that [plaintiff] would be reimbursed by [defendant], and [plaintiff] then reasonably and justifiably relied on this preauthorization in providing medical services," that plaintiff's claims nevertheless "require[d] [plaintiff] to step into the shoes of the [patients] and assert the duty to reimburse pursuant to those . . . patients' plans—not a duty to reimburse pursuant to a separate agreement").

42.      In sum, where, as here, assignee hospitals are questioning medical-necessity determinations and asserting the right to receive benefits under a plan governed by ERISA, such a claim is subject to complete preemption under ERISA section 502, 29 U.S.C. § 1132.

**B.      ERISA Plans Are at Issue**

43.      While Plaintiffs have not specifically identified the plans in question, ERISA-governed plans are clearly at issue in this case.[2]

44.      A health-insurance plan qualifies as an "employee welfare benefit plan" under ERISA when it meets the statutory definition of such a plan:

> [A]ny plan, fund, or program which was heretofore or is hereafter
> established or maintained by an employer or by an employee

---

[2] BCBSLA anticipates that other benefit claims allegedly assigned to Plaintiffs and at issue in this litigation will be claims pursuant to ERISA-governed benefit plans. As discussed above, Plaintiffs first produced individual patient data on October 31, 2019.  BCBSLA continues to investigate these individual patient claims and will supplement to identify other ERISA-governed benefit plans at issue.

organization, or by both, to the extent that such plan, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care, or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

ERISA § 3(1), 29 U.S.C. § 1002(1).

45.     Construing this statutory language, federal courts in Louisiana have held that an ERISA-regulated plan exists if there is (1) a plan, fund, or program (2) established or maintained by (3) an employer, an employee organization, or both (4) for the purpose of providing, among other things, "health" benefits, (5) to the participants in the plan or their beneficiaries. *See, e.g.*, *Dickens v. The Prudential Ins. Co. of Am.*, No. 05-1785, 2006 U.S. Dist. LEXIS 22507, at \*6–\*7 (W.D. La. Mar. 28, 2006); *Bennett v. Gilsbar, Inc.*, No. 98-0033, 1998 U.S. Dist. LEXIS 23121, at \*3–\*4 (W.D. La. May 27, 1998); *Godelfer v. Am. Gen. Grp. Ins. Co.*, No. 89-4845, 1990 U.S. Dist. LEXIS 11728, at \*5–\*6 (E.D. La. June 27, 1990) (citing *Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir. 1982)). As the Eleventh Circuit in *Donovan* explained, the gist of ERISA is that a plan, fund, or program falls within the ambit of ERISA protection if the plan, fund, or program covers participants due to their employee status, and an employer or employee organization is the person that establishes or maintains the plan, fund, or program. *See Godelfer*, 1990 U.S. Dist. LEXIS 11728, at \*6 (citing *Donovan*, 688 F.2d at 1371).

46.     Here, BCBSLA has identified three exemplar patient claims which satisfy these criteria. Patient One (de-identified with patient number A0001512500011 to protect PHI) is a

14

member or beneficiary of the Palm Energy Partners, LLC employee health benefits plan.[3] At all relevant times, Palm Energy Partners operated in the energy services industry, particularly oil and gas exploration. Palm Energy Partners provides health benefits to its members and beneficiaries through the Premier Blue Group Health Benefits Plan and pays premiums to BCBSLA for these benefits. This plan specifically advises members and beneficiaries of their rights under ERISA.

47.    Patient Two (de-identified with patient number A0001489900011 to protect PHI) is a member or beneficiary of the Gibbs Construction, LLC employee health benefits plan.[4] At all relevant times, Gibbs Construction operated in the construction industry, specifically as "an institutional, commercial and industrial general contracting and design-build construction leader in Louisiana and the Gulf Coast." Gibbs Construction provides health benefits to its members and beneficiaries through a Blue Point of Service Group Benefit Plan and pays premiums to HMOLA for these benefits. The plan specifically advises members and beneficiaries of their rights under ERISA.

48.    Patient Three (de-identified with patient number A0001421200011 to protect PHI) is a member or beneficiary of the Plaintiff CRBS's employee health benefits plan.[5] At all relevant times, CRBS operated in the healthcare industry, specifically as a "world-renowned pioneer[] in [its] specific surgical procedures" (Pet. ¶ 15) who treats "customers . . . from across the country[.]" Id. ¶ 19. CRBS provides health benefits to its members and beneficiaries through

---

[3] Patient One is included in Plaintiffs' October 31, 2019 individual patient claim production and has the insurance contract number XUP201434093.

[4] Patient Two is included in Plaintiffs' October 31, 2019 individual patient claim production and has the insurance contract number XUA200964244.

[5] Patient Three is included in Plaintiffs' October 31, 2019 individual patient claim production and has the insurance contract number XUA200846884.

a Point of Service Group Benefit Plan and pays premiums to HMOLA for these benefits. The plan specifically advises members and beneficiaries of their rights under ERISA.

49.     In sum, these health benefit plans are employee welfare benefit plans within the meaning of 29 U.S.C. § 1002(1) because "from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *See Landry v. Air Line Pilots Assn. International AFL-CIO*, 901 F.2d 404, 415 (5th Cir. 1990); *see also Rollo v. Maxicare of Louisiana, Inc.*, 695 F. Supp. 245, 247 (E.D. La. 1988) (Feldman, J.).

50.     Since Plaintiffs seeks to recover benefits allegedly due to Patients One, Two, and Three under the terms of their ERISA-governed health-benefit plan pursuant to assignments (Pet. ¶ 49), Plaintiffs' claim for these benefits is completely preempted and the entire case is removable under 29 U.S.C. § 1132(a)(1)(B). *See Borrero v. United HealthCare of N.Y., Inc.*, 610 F.3d 1296, 1304–05 (11th Cir. 2010); *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999). BCBSLA therefore properly removes this case under ERISA's complete preemption provision.

## V.    Federal Officer Removal and Complete Preemption under FEHBA

51.     Plaintiffs' claims also implicate the Service Benefit Plan and are removable under the Federal Officer Removal Statute and FEHBA's complete preemption provision.

52.     As discussed above, Plaintiffs produced claim detail on October 31, 2019. Individuals whose health benefits are through the Service Benefit Plan, have a subscriber ID that begins with "R" and then has eight digits. As described below, the Service Benefit Plan is a federally-sponsored health benefit plan for federal employees, retirees, and their dependents and was created pursuant to and is governed by FEHBA.

53.     For 2018 alone, Plaintiffs identified eight unique patients whose benefit plan numbers follow the Service Benefit Plan protocol (Rnnnnnnnn). These are: R60616570, R59737296, R59438822, R59305247, R58656200, R58344962, R58320697, R58293924, and R23261111.  Plaintiffs have identified other patients in other years whose plan numbers also indicate that their benefits come through the Service Benefit Plan.

### A.     Background on FEHBA and the Service Benefit Plan

54.     The Service Benefit Plan is created by a federal government contract between the United States Office of Personnel Management ("OPM") and the Blue Cross and Blue Shield Association ("BCBSA") pursuant to FEHBA, 5 U.S.C. §§ 8901–14. *See generally* 2013 Service Benefit Plan Master Contract, attached hereto as Exhibit 2 (hereinafter "Master Contract").[6] Neither OPM nor BCBSA are parties to this case.

55.     In contracting to establish the Service Benefit Plan, BCBSA acts as agent for and on behalf of local Blue Plans that administer the Service Benefit Plan in their respective localities. BCBSLA is such a company and administers the Service Benefit Plan in Louisiana. *See, e.g.*, *Helfrich v. Blue Cross & Blue Shield Ass'n*, 804 F.3d 1090, 1092 (10th Cir. 2015).

56.     FEHBA and the regulations implementing it set forth a comprehensive framework for the supervision and administration of FEHBA plans, including the Service Benefit Plan.

a.     Under FEHBA, OPM is vested with sole authority to contract for the provision of health plans, to determine the benefit structure of each plan, and to promulgate the official description of a plan's terms in a "Statement of Benefits" (sometimes called a

---

[6] Approximately every five years, the OPM-BCBSA contract is restated in what we call a "Master Contract." The most recent version is from 2013, and that is the Master Contract relevant in this case.  In addition, the Service Benefit Plan brochure is updated for its members and beneficiaries on an annual basis. The most recent versions can be found at https://www.fepblue.org/benefit-plans/benefit-plans-brochures-and-forms.

"brochure"). *See* 5 U.S.C. §§ 8902(a), (d), 8907. The Statement of Benefits is incorporated into the government contract between OPM and BCBSA. *See* Master Contract § 2.2(a); *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 684 (2006).

  b. Congress delegated solely to OPM the authority to police the conduct and practices of FEHBA carriers, and the agency has promulgated extensive regulations on the topic. *See* 5 U.S.C. §§ 8902(e), 8910, 8913(a); 48 C.F.R. Ch. 16; *see also Bridges v. Blue Cross & Blue Shield Ass'n*, 935 F. Supp. 37, 42–43 (D.D.C. 1996); *Kight v. Kaiser Found. Health Plans of the Mid-Atl. States, Inc.*, 34 F. Supp. 2d 334, 342 (E.D. Va. 1999).

  c. FEHBA, OPM's regulations, and the Statement of Benefits establish that the exclusive remedies to challenge a carrier's refusal to pay benefits is a request for reconsideration to the carrier, followed by an administrative appeal at OPM, followed by judicial review in federal court of OPM's decision. *See* 5 U.S.C. §§ 8902(j), 8912; 5 C.F.R. §§ 890.105, 890.107; 2019 Statement of Benefits at 144–46. The OPM administrative remedy is open to "medical providers" acting pursuant to an authorization from the enrollee. *See* 2019 Statement of Benefits at 145; *see also* 5 C.F.R. § 890.105(a)(2). OPM prohibits lawsuits against a FEHBA carrier or its subcontractors relating to the provision of benefits under a FEHBA plan. 5 C.F.R. § 890.107(c); *see also* 2019 Statement of Benefits at 145.

  d. The Service Benefit Plan's Statement of Benefits—which, again, is part of the contract with OPM—explicitly deals with assignments of benefits. The Statement of Benefits provides that the Blue Plans administering the Service Benefit Plan "reserve the right to pay you, the enrollee, directly for all covered services." 2019 Statement of Benefits at 157. Similarly, the contract itself states that "the Carrier reserves the right to pay the Member directly for all covered services . . . ." Master Contract § 2.3(j).

e.  Under FEHBA, the federal government pays for the majority of the premium cost for each enrollee, with the enrollee paying the remainder. *See* 5 U.S.C. § 8906(b)(1), (b)(2), (f); *Helfrich*, 804 F.3d at 1092. All premiums are deposited initially into the Employees Health Benefits Fund within the U.S. Treasury. 5 U.S.C. § 8909(a); *Helfrich*, 804 F.3d at 1092. Carriers of experience-rated FEHBA plans—such as the Service Benefit Plan (*see, e.g.*, Master Contract § 3.3(a))—do not receive the premiums as they are paid into the Employees Health Benefits Fund in the federal Treasury. Instead, the premiums for the Service Benefit Plan are placed into a special letter of credit account within the U.S. Treasury fund. 48 C.F.R. § 1632.170(b)(1); *see also id.* § 1652.232-71(d). The Blue Plans administering the Service Benefit Plan, such as BCBSLA, then draw directly from the letter of credit account in the Treasury fund to pay for benefit claims and allowable administrative expenses. 48 C.F.R. §§ 1632.170(b), 1652.216-71(b); *Helfrich*, 804 F.3d at 1092. Any Service Benefit Plan premiums that are not used to pay benefits and administrative expenses remain the property of the government, and are not paid to the carrier. *See, e.g.*, Master Contract § 3.3; *Helfrich*, 804 F.3d at 1092; *see also Health Care Serv. Corp. v. Methodist Hosps. of Dallas*, No. 3:13-CV-4946-B, 2015 U.S. Dist. LEXIS 54357, at *38 (N.D. Tex. Jan. 28, 2015), *aff'd*, 814 F.3d 242 (5th Cir. 2016). An experience-rated carrier's profit, if any, comes from a separate, negotiated service charge. *See Nat'l Ass'n of Postal Supervisors v. United States*, 21 Cl. Ct. 310, 315 (1990) ("The service charge is the only profit element . . . [an experience-rated] carrier may not make a profit on the premium charges themselves."), *aff'd mem.*, 944 F.2d 859 (Fed. Cir. 1991); *see also* 48 C.F.R. § 1615.404-4; *Helfrich*, 804 F.3d at 1092.

f.  FEHBA contains a broad preemption provision that states:

> The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including

> payments with respect to benefits) shall supersede and preempt any
> State or local law, or any regulation issued thereunder, which
> relates to health insurance or plans.

5 U.S.C. § 8902(m)(1) (2000) (as amended by the Federal Employees Health Care Protection

Act of 1998, Pub. L. No. 105-266, § 3(c), 112 Stat. 2363, 2366). "[U]nder § 8902(m)(1) as it

now reads, state law—whether consistent or inconsistent with federal plan provisions—is

displaced on matters of 'coverage or benefits.'" *Empire,* 547 U.S. at 686. With this preemption

provision, Congress sought to "strengthen the ability of national plans to offer uniform benefits

and rates to enrollees regardless of where they may live." H.R. Rep. No. 105-374, at 9 (1997);

*accord* S. Rep. No. 95-903, at 2 (1978) (legislative history of FEHBA's original preemption

provision); *see also Empire,* 547 U.S. at 686; *Helfrich*, 804 F.3d at 1099. The Supreme Court

recently emphasized that the phrase "relate to" in § 8902(m)(1) "'express[es] a broad pre-

emptive purpose'" and is "notably 'expansive [in] sweep.'" *Coventry Health Care of Mo., Inc. v.*

*Nevils*, 137 S.Ct. 1190, 1197 (2017) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S.

374, 383, 384 (1992)) (alterations added in *Nevils).* The Supreme Court in *Nevils* also found that

a broad reading of § 8902(m)(1) was appropriate in light of FEHBA's "statutory context and

purpose." *Id.* The Court explained:

> FEHBA concerns benefits from a federal health insurance plan for
> federal employees that arise from a federal law in an area with a
> long history of federal involvement. Strong and distinctly federal
> interests are involved, in uniform administration of the program,
> free from state interference, particularly in regard to coverage,
> benefits, and payments.

*Id.* (quotations and citations omitted).

### B.    Removal under the Federal Officer Removal Statue

57.    The Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1), authorizes the

removal of an action against "any officer (or person acting under that officer) of the United

States or any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1).

58.     As applied to government contractors such as BCBSLA, the statute has three requirements: (1) that BCBSLA be a "person;" (2) that it "acted pursuant to a federal officer's directions and that a causal nexus exists between the defendant['s] actions under color of federal office and the plaintiff's claims;" and (3) that it assert a "colorable federal defense." *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398, 400 (5th Cir. 1998) (citation omitted); *see also Bell v. Thornburg*, 743 F.3d 84 (5th Cir. 2014). The Fifth Circuit recently held that each of these elements was satisfied in related litigation by SCSH against BCBSLA, which also challenged BCBSLA's failure to honor assignments with respect to patients subject to the Service Benefit Plan. *See St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, 935 F.3d 352 (5th Cir. 2019).

59.     The first element is met because, as the Fifth Circuit has already recognized, BCBSLA "is a 'person' under the federal officer removal statute." *Id.* at 355.

60.     The second element is also satisfied. "Based on the structure of the relationship between OPM and Blue Cross," the Fifth Circuit has concluded that "OPM enjoys a strong level of guidance and control over Blue Cross," such that the "acting under" component of the element is met. *Id.* at 356. And the "causal nexus" component is also satisfied because Plaintiffs sue BCBSLA for actions allegedly taken in the course of administering the Service Benefit Plan— specifically, in allegedly failing to pay benefits to Plaintiffs. Yet OPM's Service Benefit Plan brochure "specifies how [BCBSLA] must direct payments." *Id.* at 357. On this basis, Plaintiffs' lawsuit is causally connected to BCBSLA's actions under the direction of a federal agency and its officers. *See id.* (finding the requisite causal connection).

61.     As to the third requirement, BCBSLA has at least two colorable federal-law defenses. In this regard, the Federal Officer Removal Statute does not require BCBSLA to prove a defense is meritorious; instead, all that is required is to show that a defense is "material and non-frivolous." *Id.* These defenses include preemption and sovereign immunity.

62.     First, Plaintiffs' state-law claims are preempted by FEHBA's express preemption provision, 5 U.S.C. § 8902(m)(1), which provides that the terms of FEHBA contracts concerning benefits and payments shall supersede state law. *See* 5 U.S.C. § 8902(m)(1). Here, the Service Benefit Plan's terms unambiguously provide an exclusive administrative mechanism for Plaintiffs to raise a dispute about benefit payments, but Plaintiffs have failed to use that mechanism and have filed this lawsuit instead. Accordingly, Plaintiffs' claims for FEHBA benefits are completely preempted by FEHBA and are removable under 28 U.S.C. § 1441. *See St. Charles Surgical*, 935 F.3d at 357–58 (concluding that BCBSLA had raised a colorable FEHBA-preemption defense to SCSH's state-law claim regarding FEHBA benefits and payments).  Second, sovereign immunity is also a colorable federal defense because any funds that would be used to pay the health benefits at issue come directly from the federal Treasury. Many courts have dismissed state-law claims against a Service Benefit Plan administrator on sovereign immunity grounds. *See Inspire Malibu v. Anthem Blue Cross Life & Health Ins. Co.*, No. CV 16-5229, 2016 U.S. Dist. LEXIS 136244, at *17–20 (C.D. Cal. Sept. 30, 2016) (dismissing state law claims against Service Benefit Plan administrator on sovereign immunity grounds); *Vrijesh S. Tantuwaya MD, Inc. v. Anthem Blue Cross Life & Health Ins. Co.*, 169 F. Supp. 3d 1058, 1070–71 (S.D. Cal. 2016) ("Any recovery against Blue Shield in this case would come from funds in the federal treasury. The United States cannot be sued without its consent and the United States has not waived sovereign immunity in this case . . . ."); *Ctr. For*

*Reconstructive Breast Surgery, LLC v. Blue Cross Blue Shield of La.*, No. 11-806, 2014 U.S. Dist. LEXIS 139442, at *23 (E.D. La. Sept. 30, 2014) (dismissing state-law claims against Service Benefit Plan administrator on sovereign immunity grounds); *Mentis El Paso, LLP* v. *Health Care Serv. Corp.*, 58 F. Supp. 3d 745, 756 (W.D. Tex. 2014) (same); *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.*, 995 F. Supp. 2d 587 (N.D. Tex. 2014) (same); *see also Omega Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, 592 F. App'x 268, 272 (5th Cir. 2014); *Jacks v. Meridian Res. Co.*, 701 F.3d 1224, 1235 (8th Cir. 2012).

63.    Because all the requirements are met, BCBSLA properly removes this case pursuant to the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1).

## VI.    Plaintiffs Cannot Disclaim Federal Jurisdiction

64.    Plaintiffs attempt to insulate themselves from removal with various disclaimers that their claims "do not relate to employee welfare benefit plans subject to federal law pursuant to either ERISA . . . or FEHBA" and that Plaintiffs "do not seek any coverage determination or finding as to what benefits may be owed/not owed under any insurance policy to or on behalf of their patients," "specifically refuse to plead and expressly waive any rights they may have against Defendants under any and all federal laws, either independently or on behalf of their patients," and do "not make a claim against Defendants either expressly or impliedly based upon assignments regarding claims Defendants' customers may have against Defendants and hereby expressly waive same." Pet. ¶¶ 80, 86. Yet, none of these disclaimers can operate to bar federal jurisdiction or removal.

65.    Federal courts have rejected attempts by plaintiffs to circumvent federal jurisdiction through boilerplate, self-serving disclaimers like those recited by Plaintiffs here. In *Borrero v. United HealthCare of New York, Inc.*, for instance, the plaintiffs sought to obtain remand of claims that had been removed pursuant to ERISA's preemption provision by arguing

that "their complaints expressly disclaim causes of action under ERISA." 610 F.3d 1296, 1303 (11th Cir. 2010). The Eleventh Circuit rejected this "attempt[] [by plaintiffs] to undermine their own standing to sue." *Id.* Because the complaints "raise[d] precisely the type of ERISA determinations that trigger complete preemption and convert the otherwise state law claims into federal claims," the plaintiffs could not escape federal jurisdiction with disclaimers presenting "a *legal* rather than *factual* conclusion." *Id.* (emphasis added). So too here.

66.    The Fifth Circuit and its district courts have held similarly. *See, e.g.*, *HECI Exploration Co. v. Holloway*, 862 F.2d 513, 521 (5th Cir. 1988) ("[I]t would go too far to hold that parties could agree to apply state law to an ERISA claim. . . . The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA."); *Anderson v. Bus. Men's Assurance Co.*, No. 02-2212, 2003 U.S. Dist. LEXIS 9833, at *10 (E.D. La. May 5, 2003) ("Various courts have found that parties may not stipulate or agree that state law will govern an ERISA claim, despite the fact that a provision of the contract may provide that state law is applicable or that the plan shall be administered in accordance with state law." (collecting cases)); *Ctr. for Restorative Breast Surgery, L.L.C. v. Humana Health Ben. Plan of La., Inc.*, No. 10-4346, 2011 U.S. Dist. LEXIS 36709, at *12 (E.D. La. Mar. 21, 2011) ("Although Plaintiffs state in their petition that '[they] are not making any claims under the Employee Retirement Income Security Act,' that is of no moment. Complete preemption makes a purportedly state-law cause of action inherently federal; there is no way to 'forego' bringing it as a federal claim."); *see also Concha v. London*, 62 F.3d 1493, 1509 (9th Cir. 1995) ("Here, there is no question that the [plaintiffs'] claims relate to the administration of an ERISA-covered plan, notwithstanding the self-

serving disclaimer inserted on the face of the pleading. Because ERISA preempts the [plaintiffs'] state-law claims, and because the [plaintiffs] have standing to file an ERISA claim . . . denial of the [plaintiffs'] motion to remand was proper.").

67.    Accordingly, Plaintiffs cannot avoid federal jurisdiction merely by disavowing any attempt to enforce assigned rights under an ERISA or FEHBA plan.

## VII.    Venue and Procedure

68.    The Civil District Court for Orleans Parish, Louisiana is located within the territorial limits of the United States District Court for the Eastern District of Louisiana. 28 U.S.C. § 98(a). Venue, therefore, is proper in this district under 28 U.S.C. § 1441(a).

69.    Pursuant to 28 U.S.C. § 1446(d), undersigned counsel certifies that a copy of the Notice of Removal will be served promptly on all parties and will be filed with the Clerk of Court for the Civil District Court for Orleans Parish, Louisiana.

70.    BCBSLA expressly reserves any and all rights with respect to this proceeding, including, but not limited to, all objections, defenses, and exceptions.

WHEREFORE, BCBSLA prays that this Notice of Removal be deemed good and sufficient, and that Case No. 2017-1095 be removed from the Civil District Court for the Parish of Orleans to this Honorable Court.

Dated: November 7, 2019.

Respectfully submitted,

*/s/ Tyler J. Rench*
MICHAEL C. DREW, T.A. (#30884)
RICHARD J. TYLER (#1155)
TYLER J. RENCH (#34049)
MICHAEL J. O'BRIEN (#38852)
Jones Walker LLP
201 St. Charles Avenue, Suite 5100
New Orleans, Louisiana 70170
Telephone: (504) 582-8336
Facsimile: (504) 589-8336
mdrew@joneswalker.com
rtyler@joneswalker.com
trench@joneswalker.com
mobrien@joneswalker.com

*and*

ALLISON N. PHAM (#29369)
JESSICA W. CHAPMAN (#31097)
RICHARD SHERBURNE (#02106)
5525 Reitz Avenue (70809)
Post Office Box 98029
Baton Rouge, Louisiana 70898-9029
Telephone: (225) 295-2454
Facsimile: (225) 297-2760
Allison.Pham@bcbsla.com
Jessica.Chapman@bcbsla.com
Richard.Sherburne@bcbsla.com

***Attorneys for Defendants,***
***Louisiana Health Service & Indemnity***
***Company d/b/a Blue Cross and Blue Shield of***
***Louisiana and HMO Louisiana, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has this date been mailed via email and United States Mail, postage prepaid and properly addressed, to the following known counsel of record.

Matthew A. Sherman
Chehardy Sherman Williams
One Galleria Blvd., Ste. 1100
Metairie, Louisiana 70001
mas@chehardy.com

November 7, 2019

/s/ Tyler J. Rench