# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ST. CHARLES SURGICAL HOSPITAL, LLC, ET AL.,**<br>   **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO.  19-13497** |
| **LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY, ET AL.,**<br>   **Defendants** | **SECTION: "E" (5)** |

## <u>ORDER AND REASONS</u>

Before the Court is a Motion to Remand and for Just Costs and Actual Expenses filed by Plaintiffs, the Center for Restorative Breast Surgery, L.L.C. (the "Center") and St. Charles Surgical Hospital ("Hospital").[1] Defendants, Louisiana Health Service & Indemnity Company d/b/a Blue Cross Blue Shield of Louisiana ("Blue Cross Blue Shield of Louisiana"), Blue Cross & Blue Shield of Louisiana, Inc.,[2] and HMO Louisiana, Inc. (collectively, "Blue Cross Louisiana Defendants"), oppose the motion.[3] The Center and the Hospital filed a reply.[4] Oral argument on the motion was held on January 16, 2020.[5] For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART.**

## BACKGROUND

This Court's lengthy history with this matter began when, on April 6, 2010, the Center for Restorative Breast Surgery, L.L.C. and St. Charles Surgical Hospital, filed suit in the Civil District Court for the Parish of Orleans, State of Louisiana. Louisiana Health Service & Indemnity Company d/b/a Blue Cross Blue Shield of Louisiana removed the

---

[1] R. Doc. 11. References to "R. Doc. #" are references to the record in this action.
[2] Plaintiffs name Blue Cross & Blue Shield of Louisiana, Inc. as a defendant. Defendants aver "there is no such company . . . according to the Louisiana Secretary of State." R. Doc. 1 at ¶ 5.
[3] R. Doc. 14.
[4] R. Doc. 24.
[5] R. Doc. 26.

case to this Court on April 12, 2011 ("*Blue Cross* I") based on federal question jurisdiction and the federal officer removal statute.[6] The *Blue Cross I* defendants were numerous Blue Cross entities from across the country.

The members of the Center are surgeons who perform post-mastectomy breast reconstruction medical services.[7] The Hospital is a specialty surgical center where the physicians affiliated with the Center perform the surgeries.[8] The Center and the Hospital are out-of-network healthcare providers with respect to all *Blue Cross* I defendants, including Defendant Blue Cross Blue Shield of Louisiana in this case. The Center and the Hospital provided services to patients covered under insurance policies issued or administered by various *Blue Cross I* defendants.[9]

Final judgment was entered in *Blue Cross* I on March 31, 2017,[10] and the Center and the Hospital filed an appeal on April 21, 2017.[11] On August 16, 2017, the appeal was dismissed pursuant to the appellants' motion.[12]

On February 3, 2017, the Center and the Hospital filed suit in the Civil District Court for the Parish of Orleans, State of Louisiana, against Blue Cross Blue Shield of Louisiana, Blue Cross & Blue Shield of Louisiana, Inc., and HMO Louisiana, Inc. (*Blue Cross* II").[13] The Center and the Hospital made claims in *Blue Cross* II on four counts: (1) breach of contract; (2) detrimental reliance; (3) negligent misrepresentation; and (4)

---

[6] *Center For Restorative Breast Surgery, L.L.C. et al v. Blue Cross Blue Shield of Louisiana et al.*, Civil Action Number 11-806 (hereinafter, "*Blue Cross* I"), R. Doc. 1.
[7] *Blue Cross* I, R. Doc. 308 at ¶ 83.
[8] *Id.* at R. Doc. 308 at ¶ 91.
[9] *Id.* at R. Doc. 308 at ¶ 92, R. Doc. 458-1 at 9.
[10] *Id.* at R. Doc. 731.
[11] *Ctr Restorative Breast Surg, et al v. Blue Cross Blue Shield of LA, et al*, No. 17-30339 (5th Cir. 2017).
[12] *Id.*
[13] *St. Charles Surgical Hospital, LLC, et al. v. Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana*, Civil District Court for the Parish of New Orleans, State of Louisiana, Docket No. 17-01095 (hereinafter, "*Blue Cross* II").

fraud. In their answer, Blue Cross Blue Shield of Louisiana and HMO Louisiana, Inc. alleged the Center and the Hospital were asserting the same claims previously alleged and decided in federal court.[14] As a result, the Center and the Hospital amended their state court petition "to make it more abundantly clear that the claims made in the Petition are separate and distinct claims from those allegedly made in federal court."[15]

On April 28, 2017, Blue Cross Louisiana and HMO Louisiana, Inc. filed suit in this Court ("*Blue Cross* III")[16] against the Center and the Hospital under the All Writs Act[17] and the Anti-Injunction Act.[18] Blue Cross Louisiana sought an injunction against the litigation filed in state court by the Center and the Hospital in *Blue Cross* II. On May 23, 2017, this Court granted in part and denied in part the motion for preliminary and permanent injunctive relief.[19] Specifically, the Court enjoined the Center and the Hospital from making the following claims:

1. Any claim for breach of oral contract the value of which exceeds $500 in which they allege an oral contract existed by virtue of telecommunication and/or accessing the iLinkBlue web portal;

2. Any claim under the theory of detrimental reliance for which: (1) there was no attempt to verify the patient's eligibility and benefits through a verification telephone call or iLinkBlue; (2) there was an attempt to verify the patient's eligibility and benefits through iLinkBlue, but the verification page did not provide the amount the insurer will pay for a specific procedure; or (3) there was an attempt to verify the patient's eligibility and benefits through a verification telephone call, but a disclaimer stating there was "no guarantee of payment" was played at the beginning of the call, and the [Center and the Hospital] did not request further assurance or clarification about the amount of the allowable charge; and

3. Any claim under the theory of negligent misrepresentation for which: (1) there

---

[14] R. Doc. 8-1 at 23.
[15] *Id*. at 29.
[16] *Louisiana Health Service & Indemnity Company et al v. Center for Restorative Breast Surgery LLC et al*, Civil Action No. 17-4171 (hereinafter, "*Blue Cross* III"), R. Doc. 1.
[17] 28 U.S.C. § 1651.
[18] 28 U.S.C. § 2283.
[19] *Blue Cross* III, R. Docs. 23 (Order and Reasons) and 24 (Judgment).

was no attempt to verify the patient's eligibility and benefits through a verification telephone call or iLinkBlue; (2) there was an attempt to verify the patient's eligibility and benefits through iLinkBlue but the coverage summaries did not state the allowable amount or any other procedure-specific information; or (3) there was an attempt to verify the patient's eligibility and benefits through a verification telephone call, but the [Center and the Hospital] did not ask Blue Cross Louisiana for the allowable amount.[20]

The Court did not enjoin the Center and the Hospital from pursuing their fraud claim, explaining:

> The [Center and the Hospital] voluntarily dismissed with prejudice their fraud claim in *Blue Cross* I on October 22, 2015. Voluntary dismissals with prejudice ordinarily are deemed a final adjudication on the merits for res judicata purposes on the claims asserted or which could have been asserted in the suit. To have a preclusive effect on specific issues or facts, however, a voluntary dismissal also must be accompanied by specific findings sufficient for a subsequent court to conclude that certain matters are actually decided.

> The Court did not issue findings when it granted the [Center and the Hospital's] motion to voluntarily dismiss the Plaintiff's fraud claim. As a result, the [Center and the Hospital's] voluntary dismissal of their fraud claim has no preclusive effect, and the Court will not enjoin the [Center and the Hospital] from pursuing a fraud claim in *Blue Cross* II.[21]

On June 19, 2017, the Center and the Hospital amended their state court petition in *Blue Cross* II for the second time to assert only fraud and abuse of rights claims under Louisiana law.[22] Over the next two years, the parties engaged in "extensive discovery and procedural challenges by Defendants" as well as requests for intermediate review in state court.[23] On October 10, 2019, the Center and the Hospital moved for leave to file a third amended petition, which the state court granted on November 7, 2019.[24] According to the Center and the Hospital, the third amended petition "was filed out of an abundance of caution and in order to ensure Plaintiffs' allegations of fraud were pled 'with

---

[20] *Id*. at R. Doc. 23 at 16-17.
[21] *Id*. at R. Doc. 23 at 13-14 (internal quotation marks and citations omitted).
[22] R. Doc. 1 at ¶ 9; R. Doc. 8-1 at 54.
[23] R. Doc. 11-1 at 2.
[24] R. Doc. 1 at ¶¶ 10-12; R. Doc. 11 at 4.

particularity.'"[25]

Shortly thereafter, on November 7, 2019, Blue Cross Louisiana Defendants removed the case to federal court, arguing federal subject matter jurisdiction exists because (1) the Center and the Hospital's claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* and the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. § 8901 *et seq.*, and (2) removal is proper under the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1).[26]

On December 5, 2019, the Center and the Hospital filed the instant Motion to Remand and for Just Costs and Actual Expenses.[27] The Center and the Hospital argue (1) the Court lacks subject matter jurisdiction over this matter because the claims are not preempted and the federal officer removal statute is inapplicable, and (2) Blue Cross Louisiana Defendants' removal was untimely. The Center and the Hospital also seek an award of just costs and actual expenses, including attorney's fees, pursuant to 28 U.S.C. § 1447(c).

## LAW AND ANALYSIS

## I.     Is There Complete Preemption Under ERISA?

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims."[28] The party seeking removal bears the burden of showing that federal jurisdiction is proper.[29] "Ambiguities are construed against removal and in favor of remand because removal statutes are to be strictly

---

[25] R. Doc. 11-1 at 6.
[26] R. Doc. 1.
[27] R. Doc. 11.
[28] *In re FEMA Trailer Formaldehyde Products Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012).
[29] *Carpenter v. Wichita Falls Ind. School Dist.*, 44 F.3d 362, 365 (5th Cir. 1995).

construed."[30]

Pursuant to 28 U.S.C. § 1331, district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."[31] "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."[32] "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law."[33] "There does exist, however, an independent corollary to the well-pleaded complaint rule known as the 'complete pre-emption doctrine.'"[34] "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law."[35]

In this case, Blue Cross Louisiana Defendants contend the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because the claims of the Center and the Hospital's are completely preempted by (1) ERISA and (2) FEHBA.

ERISA is a federal statute that "completely pre-empts [a] state-law cause of action," thereby making a "claim which comes within the scope of that cause of action,

---

[30] *Poche v. Eagle, Inc.*, No. 15-5436, 2015 WL 7015575, at *2 (E.D. La. Nov. 10, 2015) (citing *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002)).

[31] 28 U.S.C. § 1331.

[32] *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing *Gully v. First National Bank*, 299 U.S. 109, 112–113 (1936)).

[33] *Id.* (citing *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 (1913) ("Of course, the party who brings a suit is master to decide what law he will rely upon") (Holmes, J.); *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 809, n. 6 (1986) ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced"); *Great North R. Co. v. Alexander*, 246 U.S. 276, 282 (1918) ("[T]he plaintiff may by the allegations of his complaint determine the status with respect to removability of a case")).

[34] *Id.* (internal quotation marks and citation omitted).

[35] *Id.* (citing *Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 24 (1983) ("[I]f a federal cause of action completely pre-empts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law.")).

even if pleaded in terms of state law," removable to federal court.[36] "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy . . . is therefore pre-empted."[37] The ERISA civil enforcement remedy is contained in ERISA § 502(a).[38] "Hence, 'causes of action within the scope of the civil enforcement provisions of § 502(a) [are] removable to federal court.'"[39] In this case, Blue Cross Louisiana Defendants argue the Center and the Hospital's claims are completely preempted by ERISA § 502(a)(1)(B), which provides:

A civil action may be brought—

> (1) by a participant or beneficiary—
>
> . . .
>
> > (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.[40]

As the Supreme Court stated in *Aetna Health Inc. v. Davila*, an individual's suit is preempted by ERISA § 502(a)(1)(B) if (1) "an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)," and (2) "there is no other independent legal duty that is implicated by a defendant's actions."[41] The first prong is satisfied if two requirements are met: (1) the plaintiff's claim must fall within the scope of ERISA; and (2) the plaintiff must have standing to sue under ERISA.[42] In addition to the analysis

---

[36] *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207-08 (2004) (quoting *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003))

[37] *Id.* at 209.

[38] 29 U.S.C. § 1132(a).

[39] *Davila*, 542 U.S. at 209 (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987)).

[40] 29 U.S.C. § 1132(a)(1)(B).

[41] *Davila*, 542 U.S. at 210.

[42] *See Lone Star OB/GYN Associates v. Aetna Health Inc.*, 579 F.3d 525, 529-30 (5th Cir. 2009); *see also Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1350 (11th Cir. 2009) (citing *Davila*, 542 U.S. at 211-12; *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 946–47 (9th Cir. 2009)).

required by *Davila*, the Fifth Circuit requires a defendant asserting the defense of ERISA preemption to prove "(1) the claim 'addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of the Plan; and (2) the claim directly affects the relationship among traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries.'"[43] "Because ERISA preemption is an affirmative defense, [the defendant pleading preemption] bears the burden of proof on [all] elements."[44] Failure to prove any of the factors under the ERISA preemption inquiry is fatal to the defendant's preemption case.[45]

### A.    Could the claim have been brought under ERISA?

### 1.    The claim must be within the scope of ERISA.

The question of whether a plaintiff's claim falls within the scope of ERISA, and thus could have been brought under ERISA, turns on the basis of the claim. "A healthcare provider suing on the basis of assignment of ERISA rights, benefits or claims from a plan member must proceed under the procedures established by § 502(a), as the provider is seeking to enforce the terms of the plan."[46] "But where the basis of the suit is entirely independent of the ERISA plan, and thus of the plan member, an assignment of benefits from the patient" does not subject the healthcare provider's claims to ERISA

---

[43] *Bank of Louisiana v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 242 (5th Cir. 2006) (quoting *Mayeaux v. Louisiana Health Serv. and Indem. Co.*, 376 F.3d 420, 432 (5th Cir.2004)).

[44] *Id.* (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (ERISA preemption is a defense); *Settles v. Golden Rule Ins. Co.*, 927 F.2d 505, 508 (10th Cir. 1991) (defendant bears burden of proving ERISA preemption); *Kanne v. Conn. Gen. Life Ins. Co.*, 867 F.2d 489, 492 n. 4 (9th Cir. 1988) (same)).

[45] *See, e.g., Omega Hosp., L.L.C. v. Aetna Life Ins. Co.*, Civil Action No. 08–3712, 2008 WL 2787466, at *2 (E.D. La. Jul. 16, 2008) (describing the test to determine whether a claim is subject to § 502(a) preemption as: "(1) if the plaintiff, at some point in time, could have brought the claim under ERISA § 502(a)(1)(B), *and* (2) there is no other independent legal duty that is implicated by a defendant's action, the plaintiff's cause of action is completely preempted by ERISA." (emphasis in original)).

[46] *Bank of Louisiana*, 468 F.3d at 242 (citing *Quality Infusion Care Inc. v. Humana Health Plan of Tex., Inc.*, 290 F. App'x. 671, 679 (5th Cir. 2008)).

preemption.[47] Put more precisely, "[a] claim that implicates the rate of payment . . . rather than the right to payment under the terms of the benefit plan, does not run afoul of *Davila* and is not preempted by ERISA."[48] A claim implicates the "right of payment" if it requires the court to determine the terms of an ERISA plan, such as what medical procedures are covered by the plan.[49] Notably, "the mere existence of an assignment of the patient's rights under the ERISA plan is jurisdictionally irrelevant so long as the provider is not actually seeking to enforce [a] derivative claim."[50]

"To determine whether [the Center and the Hospital's] causes of action fall 'within the scope' of ERISA § 502(a)(1)(B)," the Court must first examine [their] complaint[]."[51] In their third amended complaint, the Center and the Hospital allege the Blue Cross Louisiana Defendants "engaged in a continuous, systematic and collusive practice aimed at reducing payments to out-of-network providers,"[52] by, namely, "authoriz[ing] Plaintiffs to perform the subject medical services to Defendants' customers,"[53] and then, once the Center and the Hospital performed the medical services, "fail[ing] to notify Plaintiffs that Defendants no longer believed the procedures were medically necessary, and then den[ying] payment to Plaintiffs based on Defendants' internal change of position

---

[47] *Id.*

[48] *Lone Star*, 579 F.3d at 530 (citing *Blue Cross v. Anesthesia Care Assocs. Med. Group, Inc.*, 187 F.3d 1045, 1051 (9th Cir. 1999)).

[49] *Id.* at 531.

[50] *Center for Restorative Breast Surgery, L.L.C. v. Humana Health Benefit Plan of Louisiana, Inc.*, Civil Action No. 10-4346, 2011 WL 1103760, at *2 (E.D. La. Mar. 22, 2011) (citing *Intra–Operative Monitoring Svcs., Inc. v. Humana Health Benefit Plan of La., Inc.*, No. 04–2621, 2005 WL 1155847, at *2 (E.D. La. May 5, 2005)). *See also Lone Star*, 579 F.3d at 529 n. 3 ("But where the basis of the suit is entirely independent of the ERISA plan, and thus of the plan member, an assignment of benefits from the patient cannot confer standing."); *Memorial Hosp. System v. Northbrook Life Ins. Co.*, 904 F.2d 236, 250 (5th Cir. 1990) ("[A] state law action in its independent status as a hospital . . . [an] assignment of benefits is irrelevant to [the healthcare provider's] right to recover.").

[51] *Davila*, 542 U.S. at 211.

[52] R. Doc. 8-1 at 87, ¶ 40.

[53] *Id.* at 90, ¶ 60.

regarding the authorization."[54] The Center and the Hospital allege that, as part of Blue Cross Louisiana Defendant's "continuous, systematic, sophisticated, and intentional scheme to defraud and harm Plaintiffs," Blue Cross Louisiana Defendants "attempted to deprive Plaintiffs of documents and materials needed to appeal payments on authorized cases,"[55] "direct[ed] time-sensitive payment related documents with appeal deadlines to sick and recovering cancer patients instead of mailing the documents to Plaintiffs,"[56] and "refused and failed to recognize valid and enforceable assignments of claims where Defendants were advised to communicate with Plaintiffs."[57] The Center and the Hospital further allege the Blue Cross Louisiana Defendants communicated to the Center and the Hospital that they would pay a fair and reasonable amount for the authorized services rendered by the Center and the Hospital and they knowingly and intentionally caused harm to the Center and the Hospital.[58]

The Center and the Hospital bring fraud and abuse of right claims against Blue Cross Louisiana Defendants under Louisiana law. "Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud also may result from silence or inaction."[59] The "abuse of rights" doctrine "is a civilian concept which is applied only in limited circumstances because its application renders unenforceable one's otherwise judicially protected rights."[60] The abuse of rights doctrine is applied only when one of the following conditions is met: (1) the predominant motive for exercise of the right

---

[54] *Id.* at 90, ¶ 64.
[55] *Id.* at 88, ¶ 47.
[56] *Id.* at 88, ¶ 48.
[57] *Id.* at 88-89, ¶ 49.
[58] *Id.* at 86-87, ¶¶ 31, 33-34.
[59] La. C. C. art. 1953.
[60] *Truschinger v. Pak*, 513 So.2d 1151, 1154 (La. 1987).

was to cause harm; (2) there was no serious or legitimate motive for exercise of the right; (3) the exercise of the right violates moral rules, good faith, or elementary fairness; or (4) the exercise of the right is for a purpose other than that for which it is granted.[61] In this case, the Center and the Hospital challenge Blue Cross Louisiana Defendants' exercise of the right to make representations regarding coverage determinations and reasonable payments, alleging Blue Cross Louisiana Defendants' "misrepresentations and systematic failure to pay Plaintiffs a reasonable amount" allowed Blue Cross Louisiana Defendants to "obtain[] an unjust advantage by keeping the monies Defendants promised to pay Plaintiffs for medical services."[62]

With respect to both their fraud claim and the abuse of rights claim, the Center and the Hospital state:

> [The Center and the Hospital] do not claim or seek coverage or benefits on behalf of their patients, and expressly waive same, but instead seek to enforce to independent state law (not federal law) legal duties that Defendants owe directly to Plaintiffs. Plaintiffs specifically refuse to plead and expressly waive any rights they may have against Defendants under any and all federal laws, either independently or on behalf of their patients.[63]

The Center and the Hospital devote an entire section of the third amended petition, under the heading "The Claims of Plaintiffs are Exclusively State Law Claims," to explain how their case "arises and is brought exclusively under the laws of Louisiana" and their claims "do not relate to employee welfare benefit plans subject to federal law pursuant to either ERISA, 29 U.S.C. § 1132(a), or FEHBA, 5 U.S.C. § 8901 *et seq.*, and Plaintiffs expressly waive the same."[64]

Blue Cross Louisiana Defendants concede the Center and the Hospital's fraud and

---

[61] *Id.* (citations omitted).
[62] R. Doc. 8-1 at 91, ¶ 72.
[63] *Id.* at 89-90, ¶ 58; 91, ¶ 70.
[64] *Id.* at 92, ¶¶ 79-80.

abuse of rights claims in the second amended petition "were based on allegations that [Blue Cross Louisiana Defendants] promised to pay Plaintiffs a specified amount for treatment of patients, and then failed to pay the promised amount" and thus are not preempted.[65] However, Blue Cross Louisiana Defendants argue the following new allegations in the third amended petition cause the claims of the Center and the Hospital to fall within the scope of ERISA § 502(a)(1)(B): (1) the "new allegations regarding [the Blue Cross Louisiana Defendants'] pre-authorization of medical procedures" and "challenges [to the Blue Cross Louisiana Defendants'] determinations of medical necessity," (2) the "new allegations that [Blue Cross Louisiana Defendants] failed to comply with various ERISA-specific procedural requirements," namely, that the Center and the Hospital were deprived of documents needed to appeal payments on authorized cases, and (3) the "new allegations concerning patients' assignments of benefits to Plaintiffs," namely, that Blue Cross Louisiana Defendants refused and failed to recognize valid and enforceable assignments of claims.[66] Blue Cross Louisiana Defendants contend these new allegations "necessitate determination of rights under the ERISA-governed plans and thereby bring those claims within *Davila*."[67]

The Court disagrees. The Center and the Hospital do not contest any findings of whether certain medical procedures were medically necessary under the terms of any benefit plan. As the Center and the Hospital state, the third amended petition's "mention of ERISA nomenclature [alone] does not transmogrify this action to an action to enforce or clarify any plan participant's rights/benefits under ERISA."[68] The Center and the

---

[65] R. Doc. 14 at 5 (citing R. Doc. 8-1 at 57, ¶ 24).
[66] R. Doc. 14 at 9-11.
[67] *Id.* at 16.
[68] R. Doc. 24 at 7.

Hospital allege Blue Cross Louisiana Defendants committed fraud and abuse of rights because they fraudulently represented that certain medical procedures were "medically necessary," or "authorized," and, once the Center and the Hospital performed these procedures, Blue Cross Louisiana Defendants failed to pay the Center and the Hospital reasonable amounts for the procedures. The Center and the Hospital clearly make these allegations to support their claim that Blue Cross Louisiana Defendants made a misrepresentation of the truth—an element of the fraud claim. These allegations also support the Center and the Hospital's abuse of right claim by showing that Blue Cross Louisiana Defendants' misrepresentations were made with the "predominate motive" to "cause harm"—to induce the Center and the Hospital to perform procedures for which they would not be reasonably compensated.[69]

Similarly, the Center and the Hospital allege Blue Cross Louisiana Defendants attempted to deprive the Center and the Hospital of documents needed to appeal payments on authorized cases *as part of* Blue Cross Louisiana Defendants' scheme to "intentionally and systematically underpay Plaintiffs for their services to Defendants' out of state insureds."[70] The Center and the Hospital do not seek to enforce appeal rights afforded by ERISA and FEHBA plans. This allegation, instead, supports the fraud claim of the Center and the Hospital that Blue Cross Louisiana Defendants took actions "with the intention either to obtain an unjust advantage . . . or to cause a loss or inconvenience [to the Center and the Hospital]."[71] This allegation similarly supports the abuse of rights claim by showing, for instance, that Blue Cross Louisiana Defendants acted without a

---

[69] R. Doc. 8-1 at 91, ¶ 71.
[70] *Id*. at 90, ¶ 65.
[71] *See* La. C. C. art. 1953 (definition of "fraud").

13

"serious or legitimate motive" or for the predominant motive of causing harm.[72]

Blue Cross Louisiana Defendants' contention that the third amended petition's mere mention of the "enforceable assignment of claims" results in preemption of the Center and the Hospital's claims also is without merit. As the Fifth Circuit has held, when a healthcare provider brings "[a] state law action in its independent status as a hospital . . . [an] assignment of benefits is irrelevant to [the healthcare provider's] right to recover."[73] In such a case, the "mere existence" or allegation of an assignment of the patient's rights under an ERISA plan "is jurisdictionally irrelevant."[74] Because the Center and the Hospital do not seek to enforce their patient's rights to reimbursement pursuant to the terms of an ERISA plan, the mere mention of the "assignment of claims" in the third amended petition does not cause the claims to be preempted.

In arguing the fraud and abuse of rights claims are within the scope of § 502(a)(1)(B), Blue Cross Louisiana Defendants rely on several cases, including: *Memorial Hermann Hospital Systems v. Aetna Health Inc.,*[75] *Connecticut State Dental Association v. Anthem Health Plans, Inc.,*[76] *Montefiore Medical Center. v. Teamsters Local 272,*[77] and *McGowin v. Manpower International, Inc.*[78] The Court addresses each of these cases in turn and concludes each is easily distinguishable from the instant case.

In *Memorial Hermann*, a decision from the Southern District of Texas, the

---

[72] *See Truschinger*, 513 So.3d at 1154.

[73] *Memorial Hosp. System*, 904 F.3d at 250. *See also Lone Star*, 579 F.3d at 529 n. 3 ("But where the basis of the suit is entirely independent of the ERISA plan, and thus of the plan member, an assignment of benefits from the patient cannot confer standing.").

[74] *Center for Restorative Breast Surgery*, 2011 WL 1103760 at *2 ("[T]he mere existence of an assignment of the patient's rights under the ERISA plan is jurisdictionally irrelevant so long as the provider is not actually seeking to enforce the derivative claim.").

[75] Civil Action No. H–11–267, 2011 WL 3703770 (S.D. Tex. Aug. 23, 2011).

[76]  591 F.3d 1337 (11th Cir. 2009).

[77] 642 F.3d 321 (2d Cir. 2011).

[78] 363 F.3d 556 (5th Cir. 2004).

healthcare provider was part of a network of participating providers providing medical services to the insurance company's members pursuant to a contract between the parties.[79] Under the contract, the insurance company "would verify member eligibility, [the healthcare provider] would submit covered claims, and [the insurance company] would pay for covered services pursuant to an agreed compensation schedule."[80] The insurance company failed to pay certain submitted claims, and the healthcare provider sued the insurance company in state court for breach of contract, misrepresentation, and violations of the Texas Insurance Code.[81] After the insurance company removed the case to federal court, the district court denied the healthcare provider's motion to remand, explaining:

> Some if not the majority of [the healthcare provider's] claims, ascertainable since the production of the spreadsheet in discovery in the case, are based on [the insurance company's] refusal to pay medical claims based on lack of coverage under certain ERISA plans, including but not limited to claims denied because they were not medically necessary or they were based on a pre-existing condition. Thus the issue for at least some of the claims at issue is not the rate of payment as set out in the [contract between the parties], but the right of payment, in other words what is 'medically necessary' or a 'covered service.' When the question is the right of payment, as opposed to the rate of payment, ERISA complete preemption is triggered and [the healthcare provider's] motion for remand must fail.[82]

The healthcare provider's motion to remand was thus denied in *Memorial Hermann* because the healthcare provider contested the insurance company's failure to pay medical claims on the basis that the procedures performed were medically necessary services. Because the healthcare provider disputed the determination of benefits under the terms of the plan—whether a procedure was "medically necessary" or a "covered service"—the

---

[79] 2011 WL 3703770 at *1.
[80] *Id*. at *1 (citing state court petition).
[81] *Id*. at *1.
[82] *Id*. at *3 (citing *Lone Star*, 579 F.3d at 530–531; *Montefiore Medical Center v. Teamsters Local 272,* 642 F.3d 321 (2d Cir. 2011)).

healthcare provider's claims fell within the scope of ERISA. In contrast, in this case, the Center and the Hospital mention the phrases "medically necessary" and "covered services" only when they allege that Blue Cross Louisiana Defendants committed fraud by misrepresenting certain medical procedures were medically necessary and covered and then later failing to inform the Center and the Hospital that they had internally changed these determinations. The Center and the Hospital, thus, do not challenge whether the medical services actually were medically necessary or covered. The Center and the Hospital's claims "are entirely separate from coverage and arise out of the independent legal dut[ies]" implicated by the Center and the Hospital's fraud and abuse of rights claims under state law.[83] Accordingly, *Memorial Hermann* does not support a finding the claims are preempted by ERISA.

In *Connecticut State Dental*, a decision from the Eleventh Circuit, healthcare providers were part of the insurance company's network of healthcare providers who provide services to individuals enrolled in the insurance company's plans.[84] The healthcare providers brought claims against the health insurance company in state court for breach of contract, breach of the duty of good faith and fair dealing, violation of the Connecticut Unfair Trade Practices Act, negligent misrepresentation, and unjust enrichment, alleging the insurance company was underpaying them for services performed.[85] The insurance company removed the case to federal court and the district

---

[83] *See Lone Star*, 579 F.3d at 531.
[84] 591 F.3d at 1342. *Connecticut State Dental* involves claims brought by dentists and claims brought by a dentists' professional organization. The dentists and the professional organization filed separate complaints in state court. The insurance company removed both cases to federal court. On appeal, the Eleventh Circuit held ERISA completely preempted some portions of the dentists' claims but did not preempt the professional organization's claims. 592 F.3d at 1342. The Court discusses only the Eleventh Circuit's holding with respect to the dentists' claims.
[85] 591 F.3d at 1342.

court denied the healthcare providers' motion to remand.[86] On appeal, the Eleventh Circuit held the healthcare providers' breach of contract claim was preempted by ERISA because this claim was based on allegations implicating the "right of payment."[87] Specifically, the breach of contract claim was preempted because the healthcare providers alleged the insurance company "breached its contractual obligations by . . . 'systematically denying and/or reducing [the healthcare providers'] reimbursement for medically necessary services through [] improper denials.'"[88] Further, the healthcare providers alleged the insurance company "denied 'medically necessary claims through the use of so-called guidelines which do not comply with accepted medical/dental treatment standards.'"[89] As a result, the healthcare providers' breach of contract claim directly challenged the terms of coverage of the ERISA plan.[90] Notably, however, the Eleventh Circuit held the healthcare providers' negligent misrepresentation claims were not preempted, explaining: "a healthcare provider's claims of negligent misrepresentation and estoppel based on a plan's oral misrepresentations are not ERISA claims because they do not arise from the plan or its terms."[91]

In contrast to the healthcare providers' breach of contract claim in *Connecticut State Dental*, the Center and the Hospital do not challenge whether the procedures performed were medically necessary. Rather, like the negligent misrepresentation claim in *Connecticut State Dental*, the Center and the Hospital concede these procedures were authorized but argue that after informing the Center and the Hospital that certain

---

[86] *Id.*
[87] *Id.* at 1350.
[88] *Id.* at 1350-51 (quoting state court petition).
[89] *Id.* at 1351 (quoting state court petition).
[90] *Id.* (citing *Lone Star*, 579 F.3d at 531).
[91] *Id.* at 1347 (citing *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund*, 538 F.3d 594, 597 (7th Cir. 2008)).

procedures were authorized, Blue Cross Louisiana Defendants failed to pay the Center and the Hospital a fair and reasonable amount for the services provided. Because the Center and the Hospital's claims are based on Blue Cross Louisiana Defendants' misrepresentations and they do not arise from the plan or its terms, *Connecticut State Dental* supports remanding this case.

In *Montefiore*, a decision from the Second Circuit, a healthcare provider brought a state court action against a union and its employee benefit plan, asserting claims for breach of contract and unjust enrichment, and seeking payment for medical services provided to the plan beneficiaries that the plan allegedly failed to reimburse.[92] The Second Circuit held the healthcare provider's claims were preempted because the central dispute involved the right to payment rather than the amount of payment,[93] explaining:

> [A]mong the selection of claims for reimbursement that the parties specifically submitted for our attention on appeal, all of those for which the reason for denial is discernible appear to implicate coverage determinations under the relevant terms of the Plan, including denials of reimbursement because 'pre-certification [is] required,' because the 'services [were] not covered under [the] plan,' or because the 'member is not eligible.' None of the selected claims appear to be claims regarding, for example, underpayment or untimely payment, where the basic right to payment has already been established and the remaining dispute only involves obligations derived from a source other than the Plan.[94]

In contrast, the Center and the Hospital do not challenge Blue Cross Louisiana Defendants' findings about whether or not the procedures actually were covered. Instead, the allegations involve Blue Cross Louisiana Defendants' misrepresentations that all of the procedures were covered, and that Blue Cross Louisiana Defendants would pay the

---

[92] 642 F.3d at 325-26.
[93] *Id.* at 331 (distinguishing "claims that implicate coverage and benefits established by the terms of the ERISA benefit plan, and, on the other hand, claims regarding the computation of contract payments or the correct execution of such payments" and holding "[t]he former are said to constitute claims for benefits that can be brought pursuant to § 502(a)(1)(B), while the latter are typically construed as independent contractual obligations between the provider and the PPO or the benefit plan.").
[94] *Id.* (internal citations omitted).

Center and the Hospital reasonable amounts for the procedures. As a result, *Montefiore* does not supply grounds for finding the Center and the Hospital's claims are preempted.

In *McGowin*, a decision from the Fifth Circuit, an employee sued her former employer and a third-party employer in state court, alleging age discrimination, fraud, and conspiracy to commit fraud, all in connection with the refusal to pay ERISA benefits.[95] The defendants removed the case to federal court and then moved for summary judgment.[96] The district court granted summary judgment, finding the plaintiff's claims were completely preempted by ERISA and, consequently, barred based on the plaintiff's failure to exhaust administrative remedies. On appeal, the Fifth Circuit affirmed the finding that the plaintiff's claims were completely preempted by ERISA. The court held the plaintiff clearly was seeking relief under § 502(a)(1)(B), which affords a beneficiary a federal cause of action to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. In *McGowin*, the fraud and conspiracy count in the plaintiff's complaint alleged that "'[a]s a proximate result of this conspiracy to deprive Plaintiff of her ERISA benefits . . . Plaintiff has suffered damages that amount to loss of retirement benefits, profit sharing benefits, yearly bonuses and medical health care in addition to other benefits that regular . . . employees receive.'"[97] The Fifth Circuit further noted the court "could not find fraudulent [the employer's] representations that [the plaintiff] is not eligible for benefits without first determining whether the statement is truthful, i.e., without clarifying her right to benefits under the plan."[98]

---

[95] 363 F.3d at 558.
[96] *Id.*
[97] *Id.* at 559 (quoting state court petition).
[98] *Id.*

This case is distinguishable from *McGowin* for several reasons. First, *McGowin* involved an individual beneficiary suing to recover benefits under a plan. This case involves healthcare providers, who are not direct participants or beneficiaries under any ERISA plan and cannot bring a direct claim for benefits. Second, the *McGowin* plaintiff's fraud count was based on the explicit allegation that the defendants' actions "deprive[d] Plaintiff of her ERISA benefits." In contrast, the Center and the Hospital's fraud claim is not based on an allegation that Blue Cross Louisiana Defendants deprived the Center and the Hospital of any ERISA benefits. Moreover, the Center and the Hospital state multiple times in the third amended complaint that they do not seek to recover ERISA benefits. Finally, the *McGowin* court held it could not find the employer's representations of ineligibility to be fraudulent without determining the truthfulness of the representation— which would involve clarifying the plaintiff's rights under the plan—because the *McGowin* plaintiff challenged the determination that she was ineligible for benefits. In this case, because the Center and the Hospital do not challenge the determinations of coverage under the plan, the Court would not need to clarify rights under the plan in order to determine the fraud claim. As a result, *McGowin* is not instructive in this case.

Not only do the cases relied upon by Blue Cross Louisiana Defendants fail to support a finding of preemption in this case, but, as the Center and the Hospital point out, there is an abundance of case law from this district court supporting remand in cases similar to the instant case.[99] For instance, in *Crescent City Surgical Centre v. Humana*

[99] *See, e.g.*, *Omega Hospital, LLC v. Aetna Life Insurance Co.*, No. 08-3714, 2008 WL 4091078 (E.D. La. Aug. 27, 2008); *Omega Hospital, LLC v. Healthnow New York, Inc.*, No. 08-1373, 2008 WL 2038933 (E.D. La. May 9, 2008); *Center for Restorative Breast Surgery, LLC v. Blue Cross Blue Shield of Louisiana*, No. 06-9985, 2007 WL 1428717 (E.D. La. May 10, 2007); *Intra-Operative Monitoring Services, Inc. v. Humana Health Benefit Plan of Louisiana*, Inc., No. 04-2621, 2005 WL 1155847 (E.D. La. May 5, 2005); *Inter-Operative Monitoring Services, Inc. v. Blue Cross & Blue Shield of Louisiana*, No. 03-1370, 2003 WL 21634308 (E.D. La. July 3, 2003); *Transitional Hospitals Corp. of Louisiana, Inc. v. Louisiana Health*

*Health Benefit Plan of Louisiana, Inc,*[100] an out-of-network healthcare provider sued a health insurance company in state court, alleging state law claims such as breach of contract, fraud, and negligent misrepresentation.[101] In its state court petition, the healthcare provider alleged that every time "before providing services to [the insurance company's] customers," it would verify that the insurance company "will pay for medical bills for out of network medical services," as well as what the insurance company would "agree[] to pay."[102] Based on these communications, the healthcare provider provided medical services to the customers. However, the insurance company would subsequently "underpay[]" the healthcare provider.[103] The insurance company removed the case to federal court, arguing the healthcare provider's claims were preempted by ERISA.[104] The healthcare provider filed a motion to remand.[105] The district court granted the motion, explaining:

> [The healthcare provider's] state court petition is painstakingly clear that it is only asserting its state law claims on its own behalf and not derivatively. Crucially, [the healthcare provider] specifically states its claims are 'not based on any assignment of benefits from its patients,' but instead are based on '[the insurance company's] solicitation and knowing acceptance of [the healthcare provider's] services . . .

> [The healthcare provider] does not dispute what is or is not a Covered Service. Specifically, in its petition [the healthcare provider] states, '[the healthcare provider] specifically does not seek any coverage determination or finding as to what benefits may be owed/not owed under any insurance policy to or on behalf of its patients.' Rather, [the healthcare provider] disputes the rate [the insurance

---

*Service dba Blue Cross Blue Shield of Louisiana*, No. 02-354, 2002 WL 1303121 (E.D. La. June 12, 2002); *River Parishes, Inc. v. Aetna U.S. Healthcare, Inc.*, No. 00-3380, 2001 WL 277938 (E.D. La. Mar. 20, 2001); *Lakeland Anesthesia, Inc. v. Aetna U.S. Healthcare, Inc.*, No. 00-1061, 2000 WL 777911 (E.D. La. June 15, 2000).
[100] Civil Action No. 19-9540, 2019 WL 4387152 (E.D. La. Sept. 13, 2019). At oral argument, the Center and the Hospital argued the instant case is on all fours with *Crescent City*.
[101] 2019 WL 4387152 at *1.
[102] *Crescent City Surgical Centre v. Humana Health Benefit Plan of Louisiana, Inc.*, Civil Action No. 19-9540, R. Doc. 1-3 at 6.
[103] *Id.* at 7.
[104] *Crescent City,* 2019 WL 4387152 at *1.
[105] *Id.*

company] is reimbursing them for clearly defined benefits.[106]

This case is like *Crescent City*. The Center and the Hospital do not dispute what is or is not a covered service but rather challenge Blue Cross Louisiana Defendants' alleged misrepresentation that procedures were covered and that they would pay a fair and reasonable amount for the authorized services. Further, the third amended petition is "painstakingly clear" that the Center and the Hospital are asserting state law claims on their own behalf and not seeking to derivatively enforce rights under ERISA. Specifically, with respect to both their fraud claim and their abuse of rights claim, the Center and the Hospital state:

> [The Center and the Hospital] do not claim or seek coverage or benefits on behalf of their patients, and expressly waive same, but instead seek to enforce to independent state law (not federal law) legal duties that Defendants owe directly to Plaintiffs. Plaintiffs specifically refuse to plead and expressly waive any rights they may have against Defendants under any and all federal laws, either independently or on behalf of their patients.[107]

The Center and the Hospital devote an entire section of the third amended petition, under the heading "The Claims of Plaintiffs are Exclusively State Law Claims," explaining how their case "arises and is brought exclusively under the laws of Louisiana" and their claims "do not relate to employee welfare benefit plans subject to federal law pursuant to either ERISA, 29 U.S.C. § 1132(a), or FEHBA, 5 U.S.C. § 8901 *et seq*., and Plaintiffs expressly waive the same."[108] Blue Cross Louisiana Defendants are correct that a "'plaintiff cannot avoid the preemptive force of ERISA merely because she disavows any attempt to enforce rights under an ERISA plan . . . when it is clear from the substance of the complaint that the plaintiff is attempting to vindicate rights that arise out of an ERISA plan.'"[109] In this

---

[106] *Id*. at *3.
[107] R. Doc. 8-1 at 89-90, ¶ 58; 91, ¶ 70.
[108] *Id*. at 92, ¶¶ 79-80.
[109] R. Doc. 14 at 26 (quoting *Moon v. BWX Techs., Inc*., 742 F. Supp. 2d 827, 835 (W.D. Va. 2010)).

case, it is clear from the substance of the third amended petition that the Center and the Hospital are not attempting to enforce rights arising under an ERISA plan.

### 2. The plaintiff must have standing under ERISA.

Healthcare provider claims usually are not subject to complete preemption because "a health care provider does not even have independent standing to seek redress under ERISA."[110] However, a healthcare provider may acquire derivative standing to sue under ERISA by obtaining an assignment from a "participant" or "beneficiary" of his right to payment of medical benefits.[111] In this case, the Center and the Hospital are not standing in the shoes of their patients when bringing their state law claims of fraud and abuse of rights. They are suing Blue Cross Louisiana Defendants in their independent status and thus do not derive their right to sue from ERISA plan participants. Accordingly, the Center and the Hospital do not have standing to bring the instant claims under ERISA.[112]

### B. Is there any other independent legal duty that is implicated by a defendant's actions?

Under the second *Davila* prong, the Court examines whether the Blue Cross Louisiana Defendants' claims implicate a legal duty "independent" of the ERISA plan.[113] The Center and the Hospital bring fraud and abuse of rights claims, seeking to recover damages arising out of Blue Cross Louisiana Defendants' alleged misrepresentations that procedures were covered, and Blue Cross Louisiana Defendants' failure to pay the Center

---

[110] *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.,* 904 F.2d 236, 249 (5th Cir. 1990); (citing *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286, 1290 (5th Cir.1988)).

[111] *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 195 (5th Cir. 2015).

[112] *Omega Hospital*, 2008 WL 2038933 at *2 (find plaintiff healthcare provider could not have brought its claims under ERISA because "[w]hile assignments were executed by the designated patients, Plaintiff [] is not standing in the shoes of these patients in bringing its state-law claims of detrimental reliance and/or breach of oral contract(s). [Plaintiff] is suing [the insurance company] in its independent status and does not derive its right to sue from the plan participants. . .").

[113] *Lone Star*, 579 F.3d at 530.

and the Hospital reasonable amounts for performing the procedures.

The Center and the Hospital are not seeking benefits under any health insurance plan. The second *Davila* prong "is not satisfied" when a plaintiff healthcare provider "is not trying to recover benefits under any health insurance plan or dispute the terms of any such plan" but rather, "[a]s an independent third-party provider," the plaintiff is asserting claims based on "misrepresent[ations] in a telephone call [or other communication] [of] what Plaintiff would be paid for treatment of [its patients]."[114]

As discussed above, the Center and the Hospital are not attempting to recover benefits under any health insurance plan or dispute the terms of any such plan. Rather, the Center and the Hospital allege Blue Cross Louisiana Defendants represented they would reimburse the Center and the Hospital for medical procedures performed, and then failed to pay them reasonable amounts for the procedures performed. This claim involves an independent duty under state law not to "misrepresent[] or a suppress[] [] the truth . . . to obtain an unjust advantage . . . or to cause a loss or inconvenience."[115] As a result, an independent legal duty is implicated by the Blue Cross Louisiana Defendants' actions, and the second *Davila* prong.

### C. Do the claims address an area of exclusive federal concern?

Claims that require inquiry into the administration or the terms of an ERISA benefit plan are claims addressing an area of exclusive federal concern.[116] The Fifth Circuit has held "areas of exclusive federal concern" include "the right to receive benefits under

---

[114] *Omega Hospital*, 2008 WL 2038933 at *2.
[115] La. C. C. art. 1953.
[116] *Bank of Louisiana*, 468 F.3d at 242 (citing *Hollis v. Provident Life and Accident Ins. Co.*, 259 F.3d 410, 414 (5th Cir. 2001) (right to receive benefits under an ERISA plan is an area of exclusive federal concern); *Hubbard v. Blue Cross & Blue Shield Ass'n*, 42 F.3d 942, 946 (5th Cir. 1995) (claim that would require inquiry into how benefit claims were processed implicates area of federal concern)).

the terms of an ERISA plan"[117] and "how benefit claims were processed."[118]

In *Omega Hospital, L.L.C. v. Aetna Life Ins. Co.*, a third party medical provider sued an insurance company for breach of oral contract and detrimental reliance after the insurance company assured the medical provider a patient's procedure was covered and then refused to pay the healthcare provider.[119] With respect to the "area of exclusive federal concern" inquiry, the district court held:

> Plaintiff here is not attempting to recover benefits under an ERISA plan, thus the claim does not address an area of exclusive federal concern. As an independent third-party medical provider, the Plaintiff is attempting to recover the benefits that Defendant allegedly assured Plaintiff it would provide.[120]

This case is analogous to *Omega*. The Center and the Hospital's claims are premised on Blue Cross Louisiana Defendants' representations that they would reimburse the Center and the Hospital for medical procedures, and their subsequent failure to reimburse the Center and the Hospital reasonable amounts for the services provided. As a result, the Center and the Hospital's claims do not depend on a determination of coverage or benefits under any ERISA plan, nor do the claims depend on proof that Blue Cross Louisiana Defendants failed to follow ERISA procedures in paying and processing benefit claims. The Center and the Hospital's claims do not address an area of exclusive federal concern.

### D. Do the claims directly affect the relationship among traditional ERISA entities?

A defendant pleading preemption must prove the claims directly affect "the relationship among traditional ERISA entities—the employer, the plan and its fiduciaries,

---

[117] *Mayeaux*, 376 F.3d at 432; *Hollis*, 259 F.3d at 414.
[118] *Hubbard*, 42 F.3d at 946.
[119] *Omega Hospital, LLC v. Aetna Life Insurance Co.*, No. 08-3714, 2008 WL 4091078, at *1 (E.D. La. Aug. 27, 2008).
[120] *Id.*, at *2 (internal citations omitted).

and the participants and beneficiaries."[121] The Fifth Circuit has explained:

> For purposes of ERISA preemption the critical distinction is not whether the parties to a claim are traditional ERISA entities in some capacity, but instead whether the relevant state law affects an aspect of the relationship that is comprehensively regulated by ERISA. As we have noted, ERISA may preempt some claims between traditional ERISA entities but not others . . . [T]he critical determination [is] whether the claim itself created a relationship between the plaintiff and defendant that is so intertwined with an ERISA plan that it cannot be separated.[122]

For instance, in *Mayeaux v. Louisiana Health Service and Indemnity Co*mpany, the Fifth Circuit held a medical practitioner's claims directly affected the relationship among traditional ERISA entities "because they challenge[d] [the insurance company's] handling, review, and disposition of a request for coverage. The purpose of these proceedings is to collaterally attack [the insurance company's] determination of the actual obligations under the terms of the insurance policy."[123] The Fifth Circuit explained:

> If a medical practitioner could collaterally challenge a plan's decision not to provide benefits, he would directly affect the relationship between the plan and its beneficiary, two traditional ERISA entities. That clearly cannot be allowed. . .

> To allow a medical practitioner to sue for defamation and intentional interference when an ERISA plan administrator decides that the plan does not cover a particular medical treatment for a particular participant or beneficiary would undoubtedly jeopardize the relationships among the traditional ERISA entities, of which the treating physician is not one.[124]

Blue Cross Louisiana Defendants argue the third amended petition's mere mention of the "enforceable assignment of claims" is tantamount to the Center and the Hospital standing in the shoes of their patients and asserting a right to payment under the beneficiaries' plans and, as a result, directly affects the relationship among traditional ERISA entities. This is simply not the case. The Center and the Hospital do not seek to

---

[121] *Bank of Louisiana*, 468 F.3d at 242 (citing *Mayeaux*, 376 F.3d at 432).
[122] *Id.* at 243 (internal quotation marks and citations omitted).
[123] 376 F.3d at 432-33.
[124] *Id.* at 433.

enforce their patients' rights to reimbursement pursuant to the terms of an ERISA plan. Instead, they seek to hold Blue Cross Louisiana Defendants liable to the Center and the Hospital for misrepresenting that procedures were covered and that they would receive a reasonable payment. As a result, the Center and the Hospital's claims do not directly affect the relationship among traditional ERISA entities.

### E. The Court concludes there is not complete preemption under ERISA.

Having considered all the relevant factors in the ERISA preemption inquiry, the Court finds "coverage and benefit determinations are not implicated [by the third amended petition's added allegations concerning "medical necessity" and "authorizations"]."[125] Further, the third amended petition's added allegations concerning "ERISA-related procedural requirements" do not implicate the right to payment under the terms of a benefit plan. As a result, the Center and the Hospital's allegations do not cause the Center and the Hospital's claim to fall within the scope of ERISA § 502(a)(1)(B),[126] and the Center and the Hospital lack standing to bring their claims under ERISA. The Center and the Hospital's claims implicate legal duties independent of ERISA. Similarly, the Center and the Hospital's claims do not address an area of exclusive federal concern, nor do they directly affect the relationship among traditional ERISA entities. Blue Cross Louisiana Defendants have failed to carry their burden of establishing the Center and the Hospital's claims are preempted under ERISA.

## II. Is There Complete Preemption Under FEHBA?

FEHBA, like ERISA, contains a preemption provision.[127] Although FEHBA and

---

[125] *Lone Star*, 579 F.3d at 532.
[126] *See id.* at 530 (citing *Anesthesia Care*, 187 F.3d at 1051).
[127] *See* 5 U.S.C. § 8902(m)(1).

ERISA are different federal statutes, "their preemption provisions are analytically similar."[128] FEHBA's preemption provision "closely resembles ERISA's express preemption provision, and precedent interpreting the ERISA provision thus provides authority for cases involving the FEHBA provision."[129] As in the case of ERISA preemption, if a healthcare provider's claims "do not 'touch upon a benefit determination'" and, instead, "seek[] relief under state law based on a legal duty that is independent from the health care plan," then the healthcare provider's claims are not preempted by FEHBA. [130] The parties agree that if the claims in this case are not preempted under ERISA, then they are also not preempted under FEHBA.[131]

Because the preemption provisions of ERISA and FEHBA are analytically similar, Blue Cross Louisiana Defendants' preemption argument under FEHBA fails for the same reasons their preemption argument under ERISA fails. As a result, Blue Cross Louisiana Defendants have failed to carry their burden in establishing that the Court has federal question jurisdiction over this matter under ERISA or FEHBA.

## III.    Federal Officer Removal Statute

Blue Cross Louisiana Defendants also argue removal is proper under the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1). Unless Congress expressly provides otherwise, the general removal statute, 28 U.S.C. § 1441(a), provides that a federal court

---

[128] *Transitional Hosps. Corp. of La., Inc. v. Am. Postal Workers Union Health Plan*, No. 09-6245, 2010 WL 187388, at *3 n.16 (E.D. La. Jan. 13, 2010) (citing *Marin General Hospital v. Modesto & Empire Transaction Co.*, 581 F.3d 941 (9th Cir.2009) (citing *Botsford v. Blue Cross & Blue Shield of Mont., Inc.*, 314 F.3d 390, 393-94 (9th Cir. 2002)).

[129] *Botsford*, 581 F.3d at 393-94 (cited with approval by *Transitional Hosps.*, 2010 WL 187388 at *3 n.16).

[130] *Transitional Hospitals Corp. of Louisiana, Inc. v. Am. Postal Workers Union Health Plan*, Civ. A. 09-6245, 2010 WL 187388, at *4 (E.D. La. Jan. 13, 2010).

[131] *Compare* R. Doc. 11-1 (Motion to Remand) (arguing FEHBA does not completely preempt the claims because "the preemption provisions of FEHBA and ERISA [are] 'analytically similar.' (citing *Transitional Hospitals*, 2010 WL 187388 at *3)) *with* R. Doc. 14 at 17 n.31 ("BCBSLA agrees with Plaintiffs that the complete preemption analysis under FEHBA is similar to that under ERISA.").

may exercise removal jurisdiction over state court actions if the federal court would have

original jurisdiction over the case.[132] Section 1442(a)(1) excludes actions against the

United States or any agency or officer thereof:

> (a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
>> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.[133]

Section 1442(a)(1), "is a pure jurisdictional statute in which the raising of a federal

question in the officer's removal petition . . . constitutes the federal law under which the

action against the federal officer arises for [Article III] purposes."[134] Ordinarily, the

removing defendant has the burden to establish that federal jurisdiction exists.[135]

However, because § 1442(a) must be liberally construed,[136] whether federal officer

removal jurisdiction exists must be assessed "without a thumb on the remand side of the

scale."[137] The federal officer removal statute authorizes removal if: (1) the defendant is a

person within the meaning of the statute; (2) the defendant acted under the direction of

a federal officer; (3) a causal nexus exists between the defendant's actions under color of

federal office and the plaintiff's claims; and (4) the defendant has a colorable federal

---

[132] 28 U.S.C. § 1441(a).

[133] *Id.* § 1442(a)(1).

[134] *Zeringue v. Crane Co.*, 846 F.3d 785, 789 (5th Cir. 2017)(quoting *Mesa v. California*, 489 U.S. 121, 136 (1989)).

[135] *See Manguno*, 276 F.3d at 723.

[136] *See, e.g*, *City of Walker v. Louisiana*, 877 F.3d 563, 569 (5th Cir. 2017) ("federal officer removal under 28 U.S.C. § 1442 is unlike other removal doctrines: it is not narrow or limited.")

[137] *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 462 (5th Cir. 2016) (citations omitted).

defense.[138],[139]

The Center and the Hospital dispute only the applicability of the second element, whether Blue Cross Louisiana Defendants acted "under" the direction of a federal officer. Blue Cross Louisiana Defendants contend they acted "under" the direction of the Office of Personnel Management ("OPM").[140] The Fifth Circuit has held acting "under" the direction of a federal officer "refer[s] to what has been described as a relationship that involves 'acting in a certain capacity, considered in relation to one holding a superior position or office.'"[141] "'[T]he private person's 'acting under' must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior.'"[142] "[T]he help or assistance necessary to bring a private person within the scope of the statute does *not* include simply *complying* with the law."[143] Similarly, "a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone."[144] Merely articulating the regulations from which an insurance company denied a plaintiff's submitted claims for payment does not demonstrate the insurance company's decisions were performed pursuant to the direction and detailed control of a federal officer.[145]

[138] *St. Charles Surgical Hospital, L.L.C. v. Louisiana Health Service & Indemnity Co.,* 935 F.3d 352, 355 (5th Cir. 2019) (citing *Bartel v. Alcoa S.S. Co., Inc.*, 805 F.3d 169, 172 (5th Cir. 2015)).

[139] Following the 2011 amendments to the Federal Officer Removal Statute, "[t]he Third and Fourth Circuits shifted their jurisprudence away from the causal nexus test and now require only a 'connection' or 'association' . . . between the act in question and the federal office." *Latiolais v. Huntington Ingalls, Inc.*, 918 F.3d 406, 412–13 (5th Cir. 2019), *reh'g en banc granted*, 923 F.3d 427 (5th Cir. 2019) (citing *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Ass'n of Philadelphia*, 790 F.3d 457, 471 (3d Cir. 2015); *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 258 (4th Cir. 2017)). The Fifth Circuit recently granted rehearing in a case that challenges the causal nexus requirement, arguing that the Fifth Circuit should adopt the "broader" test employed by the Third and Fourth circuits *See id.* The "casual nexus" element has no bearing on the Court's decision in this case.

[140] R. Doc. 14 at 19.

[141] *St. Charles*, 935 F.3d at 355 (quoting *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 151 (2007)).

[142] *Id.* (quoting *Watson*, 551 U.S. at 153).

[143] *Watson*, 551 U.S. at 152 (emphasis in original).

[144] *Id.* at 153.

[145] *Edwards v. Blue Cross/Blue Shield of Tex.*, No. 05-0144, 2005 WL 1240577 (N.D. Tex. May 25, 2005) (citations omitted).

Blue Cross Louisiana Defendants contend *St. Charles Surgical Hospital, L.L.C. v. Louisiana Health Service & Indemnity Company*[146] is dispositive. In that case, a healthcare provider sued an insurance company in state court for violating Louisiana Revised Statute 40:2010, which requires an insurance company to pay a hospital, rather than a patient, when the insurance company has notice that a patient has assigned benefits to the hospital.[147] The healthcare provider alleged the insurance company violated this statute by paying benefits directly to patients rather than the hospital, despite the insurance company's notice that the patients had assigned those benefits to the hospital.[148] The insurance company sought to remove the case to federal court under the federal officer removal statute on the ground that it was being sued in its capacity as the administrator of healthcare benefits for federal employees.[149] The Fifth Circuit explained the relevant federal superior was OPM and, pursuant to FEHBA, OPM contracted with the insurance company to provide health benefits to federal employees.[150] Under this contract, "[the insurance company] operates [] as a claims processor, rather than an insurer," and "[i]n the event of a dispute between a patient and [the insurance company] over coverage, OPM resolves the issue."[151] The Fifth Circuit held the insurance company had "acted under" the direction of OPM when it paid the patients directly, rather than the healthcare provider, despite its awareness of the patients' assignment of benefits to the healthcare provider.[152]

This case is distinguishable from *St. Charles* for several reasons. First, the Center

---

[146] 935 F.3d 352 (5th Cir. 2019).
[147] La. R.S. § 40:2010.
[148] *St. Charles*, 935 F.3d at 355.
[149] *Id*. at 354.
[150] *Id*. at 356.
[151] *Id*.
[152] *Id*. at 355-56.

and the Hospital have not sued Blue Cross Louisiana Defendants for violating La. R.S. 40:2010. To the contrary, the third amended petition includes the following disclaimer:

> Plaintiffs are not and will not make a claim or seek recovery and/or damages in this matter under La. R.S. 40:2010 and/or Defendant['s] violation of La. R.S. 40:2010, and expressly exclude such relief in this lawsuit only.[153]

Second, and more importantly, the *St. Charles* court did not hold that insurance companies "act under" the direction of OPM for all purposes. Rather, *St. Charles* held the insurance company in that case acted under the direction of OPM "*when it paid the patients directly*, rather than the hospital, notwithstanding its awareness of the patients' assignment of benefits to the hospital."[154] The insurance company's action at issue in *St. Charles* thus concerned procedures dictated by OPM. In contrast, the claims in this case arise out of Blue Cross Louisiana Defendant's alleged misrepresentations that the procedures were covered and the Center and the Hospital would be paid reasonable compensation; the claims do not arise out of procedures dictated by OPM. As a result, this case is distinguishable from *St. Charles*.

The Center and the Hospital point the Court to *Transitional Hospitals Corporation of Louisiana, Inc. v. Louisiana Health Services*.[155] In that case, a healthcare provider alleged that, prior to admitting a patient for treatment, the patient's insurance company erroneously represented the healthcare provider would be reimbursed for treatment rendered to the patient pursuant to the patient's health insurance plan.[156] The

---

[153] R. Doc. 8-1 at 94, ¶ 90. Although the Center and the Hospital allege Blue Cross Louisiana Defendants "direct[ed] time-sensitive payment related documents with appeal deadlines to sick and recovering cancer patients instead of mailing the document to Plaintiffs," R. Doc. 8-1 at 88, ¶ 48, the Center and the Hospital do not claim these actions violated La. R.S. 40:2010. Instead, the Center and the Hospital allege these actions were part of Blue Cross Louisiana Defendants' scheme to defraud and underpay the Center and the Hospital.
[154] *St. Charles*, 935 F.3d at 355 (emphasis added).
[155] No. Civ. A. 02–354, 2002 WL 1303121 (E.D. La. June 12, 2002).
[156] *Id.* at *1.

healthcare provider sued the insurance company in state court, alleging breach of contract and detrimental reliance.[157] The insurance company removed the case to federal court, arguing the case was removable pursuant to the federal officer removal statute.[158] The court granted the healthcare provider's motion to remand, holding, in pertinent part:

> Assuming arguendo that [the insurance company] would qualify as a 'person' within the meaning of the federal officer removal statute, it has given the Court nothing upon which to conclude that its employees were acting pursuant to any federal direction when they allegedly misrepresented coverage to [the healthcare provider's]. On this point, [the defendant] relies solely on the fact that the federal Office of Personnel Management sets forth the dictates of the medical precertification process for the plan at issue. However, . . . [the healthcare provider's] claims arise out of a contract that it alleges was created as a result of representations made by [the insurance company's] employees when [the healthcare provider's] attempted to verify coverage. The claims do not arise out of any of the procedures dictated by the OPM. Accordingly, [the insurance company] could not have been acting pursuant to federal authority when it allegedly mishandled the coverage inquiry.[159]

This case is analogous to *Transitional*. The Center and the Hospital's claims do not arise out of procedures dictated by OPM but rather arise out of Blue Cross Louisiana Defendants' alleged misrepresentations that procedures were covered and reasonable compensation would be paid. As the *Transitional* court stated, the mere fact OPM "sets forth the dictates of the medical precertification process" for FEHBA plans is insufficient to establish Blue Cross Louisiana Defendants acted "under" any federal officer when they made the misrepresentations at issue.

Because the second element cannot be met, Blue Cross Louisiana Defendants are not entitled to removal under the federal officer removal statute. Based on the foregoing, the Court finds no basis to exercise subject matter jurisdiction over the Center and the Hospital's state law claims.

---

[157] *Id.*
[158] *Id.*
[159] *Id.* at *3.

## IV. Timeliness

Because the Court has determined it lacks subject matter jurisdiction over this case, the Court need not address the arguments by the Center and the Hospital that removal was untimely.

## V. Attorney's Fees and Costs

The Center and the Hospital request just costs and actual expenses, including attorney's fees, pursuant to 28 U.S.C. § 1447(c). Section 1447(c) provides:

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case.[160]

The decision to award attorney's fees is discretionary.[161] "[T]he standard for awarding fees should turn on the reasonableness of the removal."[162] "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied."[163] "In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case."[164]

This issue is a close one. On one hand, the Center and the Hospital went out of their way to make clear in the third amended petition that they are not seeking benefits

---

[160] 28 U.S.C. § 1447(c).
[161] *See Miranti v. Lee*, 3 F.3d 925, 929 (5th Cir. 1993). *See also Garcia v. Amfels, Inc.*, 254 F.3d 585 (5th Cir. 2001).
[162] *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).
[163] *Id.* (citations omitted).
[164] *Id.*

on behalf of their patients and expressly waive their right to bring derivative actions under ERISA or FEHBA. In addition, for the reasons discussed above, Blue Cross Louisiana Defendants have failed to provide on point case law supporting the removability of this case. On the other hand, however, "the Court also recognizes that the boundaries of ERISA [and FEHBA] preemption are murky and involve shifting factual circumstances in the caselaw."[165] Further, denying the request for attorney's fees and costs will help to "avoid any further delay that might result from an appeal of such an award."[166] For these reasons, the Court declines to award attorney's fees and costs in this case.

## CONCLUSION

**IT IS ORDERED** that the Center and the Hospital's Motion to Remand and for Just Costs and Actual Expenses[167] is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** insofar as the matter is **REMANDED** to state court pursuant to 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction. The motion is **DENIED** as to the request for attorney's fees and costs.

**New Orleans, Louisiana, this 11th day of February, 2020.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[165] *Inter-Operative Monitoring*, 2003 WL 21634308 at *2.
[166] *Id.*
[167] R. Doc. 11.